**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

| | |
|---|---|
| KEVIN LEDFORD, individually, and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> TRAVELERS HOME AND MARINE INSURANCE COMPANY, <br><br> Serve: Director of Insurance <br> 301 W. High St., Rm. 530 <br> Jefferson City, MO 65101 <br><br> Defendant. | Case No. 2:23-cv-04079 |

## COMPLAINT FOR CLASS ACTION RELIEF

COMES NOW Plaintiff Kevin Ledford, individually, and on behalf of all others similarly situated, by his undersigned counsel, and for his Complaint for Class Action Relief against Defendant Travelers Home and Marine Insurance Company states:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff is an individual residing in Greene County, Missouri.

2. Defendant is a foreign insurance company domiciled in Connecticut. Defendant is authorized by the Missouri Department of Insurance to sell homeowner's and commercial property insurance policies in the State of Missouri.

3. This Court has personal jurisdiction over Defendant because Defendant contracts to insure property and risks in Missouri, transacts business in Missouri, enters into contracts in Missouri, committed the acts at issue in this lawsuit in Missouri, and otherwise has sufficient minimum contacts with the State of Missouri.

4. Venue is proper in this forum as the events giving rise to the claim occurred in this district.

5. Plaintiff brings this case on behalf of himself and all others similarly situated, pursuant to Federal Rule of Civil Procedure 23.

**DEFENDANT SYSTEMATICALLY UNDERPAYS ITS POLICYHOLDERS**

6. Defendant sells property insurance coverage for, *inter alia*, residential and commercial buildings in the State of Missouri.

7. This lawsuit only concerns property coverage for buildings and structures, and not personal contents, such as furniture and clothes.

8. Further, this lawsuit only concerns claims in which Defendant accepted coverage and then Defendant chose to calculate actual cash value ("ACV") pursuant to the replacement cost less depreciation methodology, as opposed to a fair market value or other approach.

9. Plaintiff contracted with Defendant for an insurance policy providing coverage for certain losses to property owned by Plaintiff and located at 667 W. Juan Tabo Lane in Republic, Missouri ("the Property"). The policy number was 0CNN41-996943798-633 (the "Policy").

10. Plaintiff paid Defendant premiums in exchange for insurance coverage. The premiums were timely paid at all times relevant to this Petition.

11. On or about December 1, 2018, the Property suffered structural damage covered by the Policy. The damage to the Property required replacement and/or repair.

12. Thereafter, Plaintiff timely submitted a claim to Defendant requesting payment for the covered loss. The claim was assigned claim number ICP0526.

13. Defendant determined the loss to the Insured Property was covered by the terms of the Policy.

14. At all relevant times, Defendant's sole methodology for calculating the ACV of structural damage losses in Missouri, including Plaintiff's loss, was to estimate the cost to repair or replace the damage with new materials (replacement cost value, or "RCV"), and then to subtract depreciation. In adjusting Plaintiff's claim, Defendant affirmatively and unilaterally chose to use this "replacement cost less depreciation" methodology to calculate Plaintiff's loss and to make the ACV payment. Defendant did not use any other methodology to calculate Plaintiff's ACV payment or the payments of the putative class members.

15. The Policy, and other property insurance forms issued by Defendant to similarly situated class members, does not permit the withholding of non-material depreciation, including future labor, as depreciation. "Labor" as used in this Petition, means intangible non-materials, specifically including both the future labor costs and the future laborers' equipment costs and contractors/laborers' overhead and profit necessary to restore property to its condition *status quo ante*, as well as the future removal costs to remove damaged property, under commercial claims estimating software. In contrast with the Policy, certain policies of insurance expressly allowed for the depreciation of labor as described herein. The type of form or endorsement will be referred to herein as a "labor permissive form." The Policy does not contain a labor permissive form.

16. After Plaintiff's loss was reported, Defendant sent an adjuster to inspect the damage and to estimate the ACV. Defendant uses commercially-available computer software to estimate RCV, depreciation, and ACV. The software used to calculate the payment to Plaintiff is called Xactimate®.

17. Xactimate® software exclusively uses the "replacement cost less depreciation" methodology to calculate the "actual cash value" or "ACV" of property damage to buildings or

structures. Xactimate® does not use any other methodology to calculate ACV, such as, e.g., the calculation of ACV through a fair market value as determined by a real estate appraisal.

18. Because Xactimate® does not use any methodology to calculate ACV other than "replacement cost less depreciation," a property insurer only makes an ACV payment through Xactimate® after the property insurer itself has affirmatively determined and agreed to use the "replacement cost less depreciation" methodology.

19. As set forth in a written Xactimate® estimate provided to Plaintiff by Defendant and dated December 1, 2018, Defendant's adjuster determined that Plaintiff had suffered a covered loss in the amount of $12,540.99 (the RCV) to his property. The estimate included the cost of materials and future labor required to complete the repairs.

20. In calculating its ACV payment obligations to Plaintiff, Defendant subtracted from the RCV estimate the deductible ($1,500.00) plus an additional amount of $4,200.92 for depreciation. Plaintiff was underpaid on his ACV claim as more fully described below.

21. ACV coverage is paid by Defendant prospectively, before repairs are made.

22. As it relates to ACV coverage, this lawsuit does *not* seek to address the propriety of depreciating any labor incorporated or embedded within a building or building product. Plaintiff does not dispute that both labor and materials incurred to build a structure, or create a building product, become integrated with the home or building and may be depreciated following a casualty loss as part of the calculation of ACV benefits.

23. However, when Defendant calculated Plaintiff's ACV benefits owed under the Policy, Defendant withheld costs for both the materials and future labor required to repair or replace the Plaintiff's building as depreciation, even though future labor does not "depreciate"

before it has even been incurred. Defendant withheld future labor costs throughout its ACV calculations as depreciation.

24. Like all property insurance claims estimating software, the specific commercial claims estimating software used by Defendant allows for the depreciation of materials only or the depreciation of both material and future labor costs in its depreciation option setting preferences.

25. Defendant's withholding of future labor costs as depreciation associated with the repair or replacement of Plaintiff's property resulted in Plaintiff receiving payment for his loss in an amount less than he was entitled to receive under the Policy. Defendant breached its obligations under the Policy by improperly withholding the cost of future labor as depreciation.

26. Plaintiff cannot determine the precise amount of future labor that has been withheld based only upon the written estimate provided. To determine the precise amount of future labor withheld, it is necessary to have access to the commercial property estimating program at issue (Xactimate®), as well as the electronic file associated with the estimate.

27. While a property insurer may lawfully depreciate material costs when calculating the amount of an ACV payment owed to an insured, it may not lawfully withhold future repair labor as depreciation under the Policy.

28. Defendant's failure to pay the full cost of the future labor necessary to return Plaintiff's and the putative class members' structures to the *status quo ante* left Plaintiff and the putative class members under-indemnified and underpaid for their losses.

29. Defendant materially breached its duty to indemnify Plaintiff by withholding future labor costs associated with repairing or replacing Plaintiff's property in its ACV payments as depreciation, thereby paying Plaintiff less than it was entitled to receive under the terms of the Policy.

30. Plaintiff disputes whether portions of the agreed-to and undisputed amounts of future labor, as determined by Defendant itself, may be withheld by Defendant as "depreciation" from Defendant's ACV payment under the terms and conditions of the Policy, including but not limited to depriving Plaintiff of the time use of money resulting from the time periods of labor withholdings in the form of prejudgment interest.

## CLASS ALLEGATIONS

31. Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Plaintiff brings this Count individually, and on behalf of all others similarly situated.

32. Plaintiff seeks to define the following class, which is tentatively defined as:

All Defendant's policyholders (or their lawful assignees) who from ten years before the filing of this lawsuit through the date of class certification, made: (1) a structural damage claim for property located in Missouri; and (2) for which Defendant accepted coverage and then chose to calculate actual cash value exclusively pursuant to the replacement cost less depreciation methodology and not any other methodology, such as fair market value; and (3) which resulted in an actual cash value payment during the class period from which non-material depreciation was withheld from the policyholder; or which should have resulted in an actual cash value payment but for the withholding of non-material depreciation causing the loss to drop below the applicable deductible, for the maximum limitations period as may be allowed by law, and in addition, any additional time as permitted by equitable tolling.

In this definition, "non-material depreciation" means application of either the "depreciate removal," "depreciate non-material" and/or "depreciate O&P" option settings within Xactimate® software or similar depreciation option settings in competing commercial software programs. It also means labor that was manually depreciated from a replacement cost estimate, including but not limited to "straight-line" depreciation.

The class excludes any claims for which the applicable limits of insurance was exhausted by the initial actual cash value payment.

The class also excludes any claims, or portions of claims, arising under labor depreciation permissive policy forms, *i.e.*, those forms and endorsements expressly permitting the "depreciation" of "labor" within the text of the policy form, unless the use of those forms violate the law of Missouri.

33. Plaintiff reserves the right to amend the definition of the proposed class through discovery or as circumstances dictate. The following persons are expressly excluded from the class: (1) Defendant and its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; and (3) the Court to which this case is assigned and its staff.

34. Plaintiff and members of the putative class as defined all suffered injury as all such persons and entities, at least initially, received lower claim payments than permitted under the policy. Certain amounts initially withheld as labor may be later repaid to some policyholders with replacement cost provisions in their policies, if any. However, policyholders who have been subsequently repaid for initially withheld labor still have incurred damages, at the least, in the form of the lost "time value" of money during the period of withholding, *i.e.*, statutory or common law prejudgment interest on the amounts improperly withheld, for the time period of withholding.

35. The members of the proposed class are so numerous that joinder of all members is impracticable. Plaintiff reasonably believes that hundreds or thousands, and possible tens of thousands of people and entities geographically dispersed across Missouri have been damaged by Defendant's actions. The names and addresses of the members of the proposed class are readily identifiable through records maintained by Defendant or from information readily available to Defendant.

36. The relatively small amounts of damage suffered by most members of the proposed class make filing separate lawsuits by individual members economically impracticable.

37. Defendant has acted on grounds generally applicable to the proposed class in that Defendant has routinely withheld labor costs as described herein in its adjustment of property damage claims under its policies of insurance. It is reasonable to expect that Defendant will

continue to withhold labor to reduce the amount it pays to its insureds under its policies absent this lawsuit.

38. Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

    a. Whether Defendant's policy forms allow the withholding of labor costs in the calculation of ACV payments under the replacement cost less depreciation methodology;

    b. Whether Defendant's policy language is ambiguous;

    c. Whether Defendant's withholding of labor costs in the calculation of ACV payments breaches the Defendant's insurance policy forms;

    d. Whether Defendant has a custom and practice of withholding labor costs in the calculation of ACV payments;

    e. Whether Plaintiff and members of the proposed class have been damaged as a result of Defendant's withholding of labor costs in the calculation of ACV payments owed; and

    f. Whether Plaintiff and members of the proposed class are entitled to declaratory relief.

39. Plaintiff's claims are typical of the claims of the proposed class members, as they are all similarly affected by Defendant's customs and practices concerning the withholding of labor. Further, Plaintiff's claims are typical of the claims of the proposed class members because Plaintiff's claims arose from the same practices and course of conduct that give rise to the claims

of the members of the proposed class and are based on the same factual and legal theories. Plaintiff is not different in any material respect from any other member of the proposed class.

40. Plaintiff and his counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiff's interests do not conflict with the interests of the proposed class it seeks to represent. Plaintiff has retained lawyers who are competent and experienced in class action and insurance litigation. Plaintiff and Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the members of the proposed class and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the proposed class while recognizing the risks associated with litigation. Plaintiff reserves the right to have unnamed class members join Plaintiff in seeking to be a class representative.

41. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Joining all proposed members of the proposed class in one action is impracticable and prosecuting individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will afford them an opportunity for legal redress and justice. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts in which such cases would proceed. Individual litigation exacerbates the delay and increases the expense for all parties, as well as the court system. Individual litigation could result in inconsistent adjudications of common issues of law and fact.

42. In contrast, a class action will minimize case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary

adjudication with consistent results and equal protection of the rights of Plaintiff and members of the proposed class. These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

43. Questions of law or fact common to Plaintiff and members of the proposed class, including those identified above, predominate over questions affecting only individual members (if any), and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class action treatment will allow a large number of similarly situated consumers to prosecute their common claims in a single forum, simultaneously, efficiently, and without the necessary duplication of effort and expense that numerous individuals would require. Further, the monetary amount due to many individual members of the proposed class is likely to be relatively small, and the burden and expense of individual litigation would make it difficult or impossible for individual members of the proposed class to seek and obtain relief. On the other hand, a class action will serve important public interests by permitting consumers harmed by Defendant's unlawful practices to effectively pursue recovery of the sums owed to them, and by deterring further unlawful conduct. The public interest in protecting the rights of consumers favors disposition of the controversy in the class action form.

44. Class certification is further warranted because Defendant has acted or refused to act on grounds that apply generally to the class, so final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

45. Plaintiff may seek, in the alternative, certification of issues classes pursuant to Federal Rule of Civil Procedure 23(c)(4).

46. An action may be brought or maintained as a class action with respect to particular issues when doing so would materially advance the litigation as a whole.

47. On information and belief, the amount in controversy exceeds $5 million.

**COUNT I – BREACH OF CONTRACT**

48. Plaintiff restates and incorporates by reference the previous paragraphs as if fully stated in this Count.

49. Defendant entered into policies of insurance with Plaintiff and members of the proposed class. These insurance policies govern the relationship between Defendant and Plaintiff, and members of the proposed class, as well as the manner in which claims for covered losses are handled.

50. These policies of insurance are binding contracts under Missouri law and are supported by valid consideration in the form of premium payments in exchange for insurance coverage.

51. Defendant drafted the insurance policies at issue, which are essentially identical in all respects material to this litigation concerning the withholding of labor as depreciation from ACV payments for structural loss when Defendant calculates ACV under a replacement cost less depreciation methodology.

52. In order to receive or be eligible to receive ACV claim payments in the first instance, Plaintiff and the putative class members complied with all material provisions and performed all of their respective duties with regard to their insurance policies.

53. Defendant breached its respective contractual duties to pay Plaintiff and members of the proposed class the ACV of their claims by unlawfully withholding labor costs as described herein.

54. Additionally, Defendant's actions in breaching its contractual obligations to Plaintiff and members of the proposed class benefitted and continues to benefit Defendant.

Likewise, Defendant's actions damaged and continue to damage Plaintiff and members of the proposed class.

55. Defendant's actions in breaching its contractual obligations, as described herein, are the direct and proximate cause of damages to Plaintiff and members of the proposed class.

56. In light of the foregoing, Plaintiff and members of the proposed class are entitled to recover damages sufficient to make them whole for all amounts unlawfully withheld from their ACV payments, including prejudgment interest as may be allowed by law.

57. By withholding repair labor costs as depreciation, Defendant breached its obligations to Plaintiff and the putative class members under their respective policies.

58. As a direct and proximate result of Defendant's breach of the insurance contract, Plaintiff and the putative class members suffered damage. More specifically, Plaintiff and the putative class members received payment for their losses in an amount less than to which they were entitled to under the policy.

59. Defendant's practice of withholding repair labor costs as depreciation in its calculation of ACV payments on property damage claims is a breach of Defendant's contractual obligations.

60. Defendant materially breached its duty to indemnify Plaintiff and the putative class members by withholding labor costs from ACV payment as depreciation, thereby paying less than Plaintiff and the putative class members were entitled to receive under the terms of the Policy, including but not limited to depriving Plaintiff and the putative class members of the time use of money resulting from the time periods of labor withholdings in the form of prejudgment interest.

## COUNT II - DECLARATORY JUDGMENT AND RELIEF

61. Plaintiff restates and incorporates by reference all preceding allegations.

62. This Court is empowered by Federal Rule of Civil Procedure 57 to declare the rights and legal relations of parties regardless of whether further relief is or could be claimed.

63. Justiciable controversies exist between Plaintiff and the putative class members and Defendant as to whether Defendant may withhold labor costs as depreciation from its insureds ACV payments.

64. Plaintiff and the putative class members have a legally protectable interest in that they are insured under Defendant's policies and Defendant refused and continues to refuse to pay the full indemnity they are entitled to receive under the policy.

65. Plaintiff and the putative class members have no adequate remedy at law.

66. This matter is ripe for adjudication between Plaintiff and the putative class members and Defendant.

67. A party may seek to have insurance contracts, before or after a breach, construed to obtain a declaration of rights, status, and other legal relations thereunder adjudicated.

68. Plaintiff and members of the proposed class have all complied with all relevant conditions precedent in their contracts.

69. Plaintiff seeks, individually and on behalf of the proposed class, a declaration that Defendant's property insurance contracts prohibit the withholding of future labor costs as described herein when adjusting losses under the methodology employed herein.

70. Plaintiff further seeks, individually and on behalf of the proposed class, any and all other relief available under the law arising out of a favorable declaration.

71. Plaintiff and members of the proposed class have and will continue to suffer injuries.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kevin Ledford requests that this Court enter judgment against Defendant Travelers Home and Marine Insurance Company for an amount in excess of $25,000, and to grant the following relief:

1. Enter an order certifying this action as a class action, appointing Plaintiff as the representative of the class, and appointing Plaintiff's attorneys as class counsel;

2. Enter a declaratory judgment, declaring that Defendant's withholding of labor costs as depreciation is contrary to and breaches the insurance policy issued to Plaintiff and members of the class;

3. Enter a declaration, and any preliminary and permanent injunction and equitable relief against Defendant and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with it, from engaging in each of the policies, practices, customs, and usages complained of herein, as may be allowed by law;

4. Enter an order that Defendant specifically perform and carry out policies, practices, and programs that remediate and eradicate the effects of their past and present practices complained of herein;

5. Award compensatory damages for all sums withheld as labor costs under the policy, plus all applicable prejudgment interest on all such sums, to Plaintiff and members of the proposed class;

6. Award costs, expenses, and disbursements incurred herein by Plaintiff and members of the proposed class as may be allowed by law, including but not limited to amounts available under the common fund doctrine;

7. All applicable Pre- and Post-Judgment interest from the date of withholding until the date of final judgment; and,

8. Grant such further and additional relief as the Court deems necessary and proper.

**JURY TRIAL DEMANDED**

**BUTSCH ROBERTS & ASSOCIATES LLC**

By: /s/ David T. Butsch
David T. Butsch #37539 (*pro hac* forthcoming)
Christopher E. Roberts #61895
231 South Bemiston Ave., Suite 260
Clayton, MO 63105
(314) 863-5700 (telephone)
(314) 863-5711 (fax)
Butsch@ButschRoberts.com
Roberts@ButschRoberts.com

Attorneys for Plaintiff