UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

KEVIN LEDFORD, individually and on
behalf of all others similarly situated,

        Plaintiff,

v.

TRAVLERS HOME AND MARINE
INSURANCE COMPANY,

        Defendant.

Case No. 2:23-CV-04079-BCW

**PLAINTIFF'S SUGGESTIONS IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

# <u>TABLE OF CONTENTS</u>

PLAINTIFF'S RESPONSES TO DEFENDANTS' MATERIAL FACTS ..................................... vi

PLAINTIFF'S CONCISE STATEMENT OF UNCONTROVERTED MATERIAL FACTS
PURSUANT TO LOCAL RULE 56.1(b)2 ...................................................................................x

 I.  BY DEPRECIATING LABOR COSTS, TRAVELERS PAID THE LEDFORDS
    $2,207.95 LESS THAN THE ACV PAYMENT TO WHICH THEY WERE
    ENTITLED ...............................................................................................................x

 II.  THE LEDFORDS COMPLIED WITH ALL POLICY CONDITIONS, AND
    TRAVELERS AFFIRMATIVELY WAIVED ALL PROOF OF LOSS
    CONDITIONS ................................................................................................... xiii

INTRODUCTION ...................................................................................................................1

ARGUMENT ...........................................................................................................................2

 I.  TRAVELERS CONTINUES TO IMPROPERLY WITHHOLD $363.02 IN FUTURE
    LABOR COSTS AS "DEPRECIATION" FROM PLAINTIFF'S ACV PAYMENT .......2

 II.  TRAVELERS' PREJUDGMENT INTEREST MOTION IS PREMATURE ..................3

 III.  PLAINTIFF IS ENTITLED TO PREJUDGMENT INTEREST ....................................5

    A. Travelers Affirmatively Waived Its Policy's Proof Of Loss Condition And
     Related Loss Payment Condition..................................................................................5

    B. Plaintiff Is Entitled To Prejudgment Interest From December 11, 2018—The Date
     Travelers Determined ACV Was "Due And Payable" And Breached The Contract
     —Through the Date Of Judgment..................................................................................9

    C. Section 408.020 Does Not Require A Demand.........................................................13

 IV.  TRAVELERS IS NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S
    DECLARATORY JUDGMENT CLAIM ...................................................................13

CONCLUSION.....................................................................................................................15

Case 2:23-cv-04079-BCW   Document 26   Filed 08/01/23   Page 2 of 30

Cases

*AIG Centennial Ins. Co. v. Fraley-Landers*, 450 F.3d 761 (8th Cir. 2006).....................................1

*Academy Bank, N.A. v. Amguard Ins. Co.*, 2022 WL 2825887 (W.D. Mo. July 8, 2022)...............5

*Addison v. Jester*, 758 S.W.2d 454 (Mo. Ct. App. 1988) ..................................................3

*Arnold v. State Farm Fire & Cas. Co.*, 268 F. Supp. 3d 1297 (S.D. Ala. 2017)...........................11

*Arnold v. State Farm Fire & Cas. Co.,* 2017 WL 5451749 (S.D. Ala. Nov. 14, 2017) .................11

*Arnold v. State Farm Fire & Cas. Co.*, 2020 WL 6879271 (S.D. Ala. Nov. 23, 2020) .............9, 12

*Burgess v. Mercantile Town Mut. Ins. Co.*, 89 S.W. 568 (Mo. Ct. App. 1905) .......................7, 8, 9

*Cedarview Mart, LLC v. State Auto Prop. & Cas. Co.*, 2021 WL 1206597
   (N.D. Miss. Mar. 30, 2021) ...................................................................................15

*Central Bapt. Church of Albany Georgia, Inc. v. Church Mutual Ins. Co.*,
   2020 WL 5496096 (M.D. Ga. Aug. 12, 2020) ............................................................9

*Churchill in Crestwood, LLC v. Schwartz*, 2011 WL 7109212 (W.D. Mo. Jan. 27, 2011)...........14

*Cont'l Indem. Co. v. IPFS of New York, LLC*, 7 F.4th 713 (8th Cir. 2021)....................................4

*Cullen v. Ins. Co. of N. Am.*, 104 S.W. 117 (Mo. Ct. App. 1907)...................................................8, 9

*Cystic Fibrosis Pharm., Inc. v. Express Scripts, Inc.*, 2016 WL 7242163
   (E.D. Mo. Dec. 15, 2016)......................................................................................15

*Dennington v. State Farm Fire & Cas. Co.*, 2016 WL 11596067 (W.D. Ark. Aug. 24, 2016)......12

*Flowshare, LLC v. TNS, US, LLC*, 2017 WL 3174321 (E.D. Mo. July 26, 2017) .......................14

*Franklin v. Lexington Ins. Co.*, 652 S.W.3d 286 (Mo. App. W.D. 2022) ............................. passim
   *transfer denied* (Mo. Oct. 4, 2022) ........................................................................1

*Freeman v. MH Equip. Co.*, 2016 WL 1732769 (E.D. Mo. May 2, 2016).....................................1

*Gorsha v. Clark*, 2022 WL 278973 (S.D. Ohio Jan. 31, 2022).....................................................4

*HHCS Pharm., Inc. v. Express Scripts, Inc.*, 2016 WL 7324968 (E.D. Mo. Dec. 16, 2016) ........14

Case 2:23-cv-04079-BCW   Document 26   Filed 08/01/23   Page 3 of 30

*Hicks v. State Farm Fire & Cas. Co.*, 2019 WL 846044 (E.D. Ky. Feb. 21, 2019)......................11

*Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452 (6th Cir. 2020)........................................11, 12

*Holden Farms, Inc. v. Hog Slat, Inc.*, 347 F.3d 1055 (8th Cir. 2003) .............................................1

*Huey v. Allstate Vehicle and Prop. Ins.*, 2020 WL 5370950 (N.D. Miss. Sept. 8, 2020 .................15

*Hughes v. Patriotic Ins. Co. of Am.*, 193 S.W.2d 958 (Mo. Ct. App. 1946) ...................................7

*In re: Packaged Seafood Prods. Antitrust Litig.*, --- F.Supp.3d ---, 2022 WL 11337564
    (S.D. Cal. Oct. 19, 2022) .................................................................................................4

*In re State Farm Fire & Cas. Co.*, 872 F.3d 567 (8th Cir. 2017) ................................................1, 5

*Jacobson Warehouse Co., Inc. v. Schnuck Mkts., Inc.*, 2020 WL 833606
    (E.D. Mo. Feb. 20, 2020)...............................................................................................4, 13

*Jo Ann Howard & Assocs., P.C. v. Cassity*, 2019 WL 6250827 (E.D. Mo. Nov. 22, 2019) ........3, 4

*LaBrier v. State Farm Fire & Cas. Co.*, 147 F. Supp. 3d 839 (W.D. Mo. 2015) ...................5, 6, 15

*LaBrier v. State Farm Fire & Cas. Co.*, 872  F.3d 567 (8th Cir. 2017)........................................15

*Lafollette v. Liberty Mut. Ins. Co.*, 2017 WL 1026424 (W.D. Mo. Mar. 16, 2017) ......................12

*Loewenstein v. Queen Ins. Co.*, 127 S.W. 72 (Mo. 1909) .................................................................8

*Miles v. Iowa Nat'l Mut. Ins. Co.*, 690 S.W.2d 138 (Mo. Ct. App. 1984)................................7, 8, 9

*Miller v. Farm Bureau Town & Country Ins. Co. of Mo.*, 6 S.W.3d 432 (Mo. Ct. App. 1999) .....12

*Mitchell v. Residential Funding Corp.*, 334 S.W.3d 477 (Mo. Ct. App. 2010)..............................10

*Mitchell v. State Farm Fire & Cas. Co.*, 954 F.3d 700 (5th Cir. 2020)..........................................12

*Nat'l Real Estate Ins., Grp., LLC v. CRC Ins. Servs., Inc.*, 2019 WL 5688238
    (W.D. Mo. June 26, 2019) ............................................................................................14, 15

*Pannell v. Mo. Ins. Guar. Ass'n*, 595 S.W.2d 339 (Mo. Ct. App. 1980) .........................................8

*Petrice v. Fed. Kemper Ins. Co.*, 260 S.E.2d 276 (W. Va. 1979) ....................................................8

*Schultz v. Queen Ins. Co.*, 399 S.W.2d 230 (Mo. Ct. App. 1965) ...................................................8

*Shields v. Metro. Prop. & Cas. Ins. Co.*, 2020 WL 7338065 (N.D. Miss. Dec. 14, 2020) ............15

iii

*Sisson v. Patel*, 2022 WL 497347 (W.D. Mo. Jan. 26, 2022)..........................................................13

*Solaria Corp. v. GCL System Integ. Tech. Co., Ltd.*, 2022 WL 267444
    (N.D. Cal. Jan. 28, 2022) ........................................................................5

*Stein for Halpern Ins. Trust v. Phoenix Life Ins. Co.*, 2018 WL 3375091
    (E.D. Mo. July 11, 2018) ........................................................................14

*Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371 (8th Cir. 2018) ......................................11, 12

*Thomas v. Liberty Nat'l Life Ins. Co*, 368 So.2d 254 (Ala. 1979) ..................................................11

*Travelers Prop. Cas. Co. of Am. v. Jet Midwest Technik, Inc.*, 2019 WL 2411443
    (W.D. Mo. June 7, 2019)........................................................................12, 13

*Vala v. Pacific Ins. Co.*, 296 Ill. App. 3d 968 (4th Dist. 1998) (Cook, J. dissenting) ....................9

*Washington v. Countrywide Home Loans, Inc.*, 747 F.3d 955 (8th Cir. 2014) ..............................1

*Weinberg v. Safeco Ins. Co. of Ill.*, 913 S.W.2d 59 (Mo. Ct. App. 1995)......................................10

*Wilcox v. State Farm Fire & Cas. Co.*, 2015 WL 927093 (D. Minn. Jan 15, 2015)....................15

*Wilcox v. State Farm Fire & Cas. Co.*, 2015 WL 927342 (D. Minn. Mar. 4, 2015)....................15


Statutes, Rules and Codes

Fed. R. Civ. P. 57 ........................................................................................................13

Fed. R. Civ. P. 59(e) ......................................................................................................5

Mo. Rev. Stat. § 480.020 ........................................................................................10, 13


Other Authorities

30 Hon. David D. Noce, Mo. Prac., Ins. Law & Practice § 5:17 (2d ed.)
    (Nov. 2022 Update)........................................................................3, 10

Allan D. Windt, 2 Ins. Claims & Disputes § 6:35 (6th ed. Feb. 2023 Update)........................7, 8

*Settling Insurance Claims After a Disaster, at:* http://www.iii.org/article/settling-insurance-claims-after-a-disaster (last visited July 31, 2023) ........................................................7

Steven Plitt, *et al.*, 13A Couch on Ins. § 195:24 (3d ed. June 2023 Update)................................7

iv

## PLAINTIFFS' RESPONSES TO DEFENDANT'S MATERIAL FACTS

1.     Travelers issued a homeowners insurance policy (the "Policy") to Plaintiff Kevin Ledford and Deborah Ledford (not named as a plaintiff), providing coverage for a residence premises located at 667 W. Juan Tabo Lane, Republic, Missouri (the "Premises"), for the policy period of December 15, 2017 to December 15, 2018. (Kidd Declaration, ¶ 4.)

**RESPONSE:**

Admit.

2.     On December 3, 2018, an insurance claim (the "Claim") was reported to Travelers for damage to the roof of the Premises caused by a windstorm, with a reported date of loss of December 1, 2018. (*Id.*, ¶ 5.)

**RESPONSE:**

Admit.

3.     On December 11, 2018, Travelers' claim professional inspected the Ledfords' roof, prepared an estimate, and issued an electronic payment to the Ledfords that same day. The payment was based on an estimated replacement cost value of $12,540.99, less depreciation of $4,200.92, less the deductible of $1,500, for a total of $6,840.07. (*Id.*, ¶ 6.)

**RESPONSE:**

Admit in part. Travelers improperly categorized and withheld $2,207.95 of future repair labor as "depreciation." If Travelers had not withheld future repair labor, the Ledfords' "actual cash value" ("ACV") payment would have been $9,048.02, not $6,840.07. (Declaration of Toby Jerrell Johnson at ¶¶ 17-18 (hereinafter "Johnson Decl.").)

4.     Travelers' records reflect that the electronic payment was accepted by the Ledfords and deposited into their bank account on or about December 20, 2018. (*Id.*, ¶ 7.)

**RESPONSE:**

Admit.

5. The Ledfords' contractor prepared an invoice dated January 10, 2019, for replacement of the entire roof, in the amount of $10,185. (*Id.*, ¶ 8.) The Ledfords, however, did not provide Travelers with a copy of their contractor's invoice until February 22, 2019. (*Id.*)

**RESPONSE:**

Admit.

6. On February 22, 2019, when Travelers received the contractor's invoice from the Ledfords, it promptly issued an electronic payment that same day in the amount of $1,844.93. (*Id.*, ¶ 9.)

**RESPONSE:**

Admit.

7. After issuing the second payment, Travelers had paid a total of $8,685, which is the amount of the contractor's invoice ($10,185) minus the deductible ($1,500). (*Id.*) After the second payment was issued, there was no remaining depreciation taken on the Claim. (*Id.*)

**RESPONSE:**

Admit the first sentence. Deny the second sentence. Travelers' two payments to the Ledfords were below what Travelers would have initially paid on December 11, 2018 but for Travelers' improper categorization of $2,207.95 in future repair labor as "depreciation." (Johnson Decl. at ¶¶ 17-18.)

8. The policy issued by Travelers to Plaintiff contains the following Loss Payment clause:

> **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

  **a.** Reach an agreement with you;

  **b.** There is an entry of a final judgment; or

  **c.** There is a filing of an appraisal award with us.

(Kidd Decl. Ex. A, Policy, at p. 26 of 48.)

**RESPONSE:**

  Admit.

  9.  The Ledfords did not submit a proof of loss during the adjustment of the Claim. (Kidd Decl., ¶ 10.)

**RESPONSE:**

  Admit.

  10.  During the adjustment of the Claim, the Ledfords did not demand payment in any specific amount except to the extent that they provided their contractor's invoice, the remaining amount of which was promptly paid on the same day that the invoice was received. (*Id.*)

**RESPONSE:**

  Admit.

  11.  During the adjustment of the Claim, Travelers did not enter into any written or oral agreement with the Ledfords that it would pay a specific amount for damage to their home. (*Id.*, ¶ 11.)

**RESPONSE:**

  Deny. Travelers agreed, at a minimum, to provide the undisputed ACV of the loss as determined by Travelers. (Kidd Dep. at 61:2-62:19; Dkt. 12-2, at 25 (Section 3 – Loss Settlement, noting that Travelers will pay the ACV of a covered loss).)

  12.  Neither the Ledfords nor Travelers have demanded an appraisal of the Claim. (*Id.*, ¶ 12.)

**RESPONSE:**

Admit.

13.     The Ledfords have not obtained a final judgment against Travelers in any lawsuit concerning the Claim. (*Id.*, ¶ 13.)

**RESPONSE:**

Admit.

## PLAINTIFF'S CONCISE STATEMENT OF UNCONTROVERTED MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1(b)2

### I.     BY DEPRECIATING LABOR COSTS, TRAVELERS PAID THE LEDFORDS $2,207.95 LESS THAN THE ACV PAYMENT TO WHICH THEY WERE ENTITLED.

1.     Connor Kidd is an employee of Travelers Indemnity. (Kidd Dep. at 6:11-6:14.)

2.     Mr. Kidd commonly handled claims on behalf of Defendant Travelers Home and Marine Insurance Company and other Travelers entities. (*Id.* at 10:20-12:14.)

3.     Mr. Kidd adjusted the Ledfords' structural damage claim. (Dkt. 12-1, ¶ 5.)

4.     Mr. Kidd confirmed coverage existed for the Ledfords' structural damage claim. (Kidd Dep. at 36:24-37:21.)

5.     The minimum amount owed under the Ledfords' policy for structural loss was the ACV of the loss. (*Id.* at 61:2-62:19.)

6.     Mr. Kidd calculated the ACV of the Ledfords' property damage using only the "replacement cost less depreciation" methodology ("RCLD" methodology). (*Id.* at 33:12-33:18, 33:24-34:3, 40:11-40:15.)

7.     The RCLD methodology determines the replacement cost of a covered loss and then applies depreciation to the total replacement cost. The remaining amount after applying depreciation is the ACV of the claim. (*Id.* at 33:12-34:3.)

8.     If a Travelers policy contains language stating that Travelers must pay the policyholder ACV, then Travelers uses the RCLD methodology to determine the ACV of the claim. (*Id.* at 41:2-41:8.)

9.     Mr. Kidd was never trained to calculate the ACV of property damage through any methodology other than the RCLD methodology. (*Id.* at 39:15-40:3.)

ix

10.     Mr. Kidd exclusively used Xactimate® software to estimate structural property claims. (*Id.* at 18:3-18:12, 19:7-19:13, 34:4-35:7, 35:15-35:18.) Xactimate® software determines the ACV for structural property damage exclusively through the RCLD methodology. (Johnson Decl. at ¶ 10.)

11.     An insurance company can take the coverage position that it will withhold future repair labor costs from an ACV payment under the RCLD methodology by "depreciating labor." In Xactimate®, this coverage position is expressed by using the "depreciation option settings" in Xactimate®. A screen shot of these settings is set forth below:



(Johnson Decl. at ¶ 13.)

12.     The withholding of future repair labor costs from an ACV payment is a function of affirmatively using the "Depreciate Non-Material," "Depreciate Removal," or "Depreciate Overhead and Profit" functions. Specifically, these functions will withhold labor from an ACV payment. (Johnson Decl. at ¶ 14; *see also* Kidd Dep. at 41:10-41:19, 44:11-45:16.)

13.     It is simple to determine the amount of labor depreciation withheld on any given property insurance claim with an .ESX file. Utilizing Xactimate® software, a user can open the .ESX file that contains all germane claim data information. Next, the user can toggle off the boxes labeled "Depreciate Non-Material" and/or "Depreciate Removal" and/or "Depreciate Overhead and Profit." Finally, the user can compare the difference between the original ACV estimate and the ACV estimate without the labor depreciation settings applied. Again, the three steps for determining the principal amount of improper labor withholding are very simple: (1) note the Net

x

Actual Cash Value Payment at the time of settlement; (2) uncheck the boxes labeled Depreciate Non-Material and/or Depreciate Removal and/or Depreciate Overhead and Profit; and (3) determine the difference between the two ACV figures. (Johnson Decl. at ¶ 15.)

14.    Travelers produced a copy of the .ESX file to Plaintiff in this lawsuit. (Johnson Decl. at ¶ 16.)

15.    On December 11, 2018, Travelers made an ACV payment to the Ledfords for $6,840.07 based upon an Xactimate® estimate. (Kidd Dep. at 52:2-52:10.)

16.    Travelers applied the "Depreciate Non-Material" depreciation option setting to the Xactimate® estimate used to calculate the Travelers' December 11, 2018 ACV payment to the Ledfords. (Johnson Decl. at ¶ 17; Kidd Dep. at 52:12-53:1, 53:19-54:3.)

17.    Travelers withheld $2,207.95 in labor costs as depreciation from the Ledfords' December 11, 2018 ACV payment. Specifically, if Travelers had turned off the depreciation option setting labeled "Depreciate Non-Material," the ACV of the Ledfords' loss would have increased from $6,840.07 to $9,048.02, and the ACV payment to the Ledfords would have increased by $2,207.95. (Johnson Decl. at ¶ 18; Kidd Dep. at 56:12-56:22, 86:22-87:4.)

18.    If Travelers had not depreciated labor costs, the Ledfords would have received more than Travelers ever paid on the claim. (Kidd Dep. at 57:25-58-4, 86:11-87:4.)

19.    On February 22, 2019, Travelers paid Plaintiff only $1,844.93 of the $2,207.95 outstanding depreciated labor costs, leaving an unpaid balance of $363.02. (Dkt. 12-2, at ¶ 9; Kidd Dep. Ex. 12 (illustrating unpaid principal after February 22, 2019 = $363.02).)

20.    While the Ledfords dispute Travelers' right to categorize and withhold future repair labor as depreciation, the Ledfords never disputed the values Travelers calculated for repair, labor, or materials. (Kidd Dep. at 65:16-65:20.)

## II. THE LEDFORDS COMPLIED WITH ALL POLICY CONDITIONS, AND TRAVELERS AFFIRMATIVELY WAIVED ALL PROOF OF LOSS CONDITIONS.

21. The Ledfords complied with all of the policy conditions. (Kidd Dep. at 38:20-39:6.)

22. The Ledfords' policy required them to submit a signed proof of loss *only* if requested by Travelers. Section I – Conditions of the Ledfords' policy states in part:

> **1. Duties After Loss.** In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following conditions is prejudicial to us…
>
> h. Send to us, within 60 days *after our request*, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief …

(Dkt. 12-2, at 24.)

23. At all relevant times, Travelers was aware it could have requested a sworn proof of loss form from the Ledfords prior to making any ACV payments. (Kidd Dep. at 72:3-72:8, 80:11-82:11.)

24. Travelers never requested a proof of loss form from the Ledfords prior to making its ACV payment to the Ledfords. (*Id.* at 69:22-69:24.)

25. Travelers was satisfied with the evidence that was visibly available to Mr. Kidd when he visited the Ledfords' home, and that the property damage Mr. Kidd observed was proof of the Ledfords' loss. (*Id.* at 72:13-72:25.) Mr. Kidd required no further information to accept or deny the Ledfords' claim. (*Id.* at 76:25-77:4.)

26. Upon visiting the Ledfords' home, Mr. Kidd confirmed that there was damage caused by a covered peril, prepared the Ledfords' Xactimate® estimate, issued the Ledfords' ACV payment, sent the Ledfords a letter, and then closed the claim pending a final invoice that same day. (*Id.* at 74:22-76:9, 76:25-77:14.)

27.    Travelers does not request proof of loss forms from policyholders for most claims. (*Id.* at 69:15-69:18.)

28.    Travelers' decision to withhold labor as depreciation was unrelated to the failure of Travelers to request a proof of loss form from the Ledfords. (*Id.* at 70:21-70:25.)

# **INTRODUCTION**

There are two overarching considerations concerning Travelers' summary judgment motion. First, Travelers' motion is based upon the factually erroneous argument that "[t]here is no dispute that Plaintiff and his wife were paid every dime they were owed on their insurance claim." Dkt. 12, at 4. Travelers, however, underpaid Plaintiff the principal amount of $363.02, *and* owes prejudgment interest. On December 11, 2018, Travelers withheld $2,207.95 in future labor costs needed to repair Plaintiff's home as "depreciation" from Plaintiff's actual cash value ("ACV") payment. Withholding these labor costs as "depreciation" breached Travelers' policy. *See Franklin v. Lexington Ins. Co.*, 652 S.W.3d 286, 302-03 (Mo. App. W.D. 2022), *transfer denied* (Mo. Oct. 4, 2022). On February 22, 2019, Travelers paid Plaintiff only $1,844.93 of the $2,207.95 outstanding depreciated labor costs, leaving an unpaid balance of $363.02. Plaintiff is entitled to recover these amounts, plus interest.

Second, the seminal issue in this case is whether Travelers was permitted to withhold future labor costs as depreciation under its policy. Travelers correctly notes that there is a conflict between the Eighth Circuit's erroneous prediction of Missouri law in *In re State Farm Fire & Cas. Co.*, 872 F.3d 567 (8th Cir. 2017), and the subsequent rejection of that prediction in *Franklin, supra. See* Dkt. 12, at 3 n.2. Under Eighth Circuit authority, this Court is obliged to follow *Franklin. See Holden Farms, Inc. v. Hog Slat, Inc*., 347 F.3d 1055, 1066 (8th Cir. 2003).[1] For this

---

[1] *See also Washington v. Countrywide Home Loans, Inc.*, 747 F.3d 955, 958 (8th Cir. 2014) ("[A]n intervening opinion by a Missouri court" can allow a federal district to ignore conflicting prior Eighth Circuit precedent); *AIG Centennial Ins. Co. v. Fraley-Landers*, 450 F.3d 761, 768 (8th Cir. 2006) (Eighth Circuit will not follow prior circuit decisions where "subsequent state court decision" makes the prior federal opinion erroneous); *Freeman v. MH Equip. Co.*, 2016 WL 1732769, at *2 (E.D. Mo. May 2, 2016) ("A prior decision by the Eighth Circuit on an unsettled question of state law does not bar consideration of an intervening decision by an intermediate state appellate court."). Unless otherwise noted, all emphasis is added and internal citations and footnotes are omitted.

1

reason, when this Court eventually considers Travelers' liability for Plaintiff's compensatory damages claim, this Court should find that Travelers breached its policy.

<u>**ARGUMENT**</u>

## I. TRAVELERS CONTINUES TO IMPROPERLY WITHHOLD $363.02 IN FUTURE LABOR COSTS AS "DEPRECIATION" FROM PLAINTIFF'S ACV PAYMENT.

Travelers' motion is based on the false premise that "[t]here is no dispute that Plaintiff and his wife were paid every dime they were owed on their insurance claim" and "[t]he *only* issue in dispute is whether Plaintiff is entitled to interest for an alleged delay in payment …." Dkt. 12, at 4 (emphasis in original); *see also id.* at 7 (erroneously arguing that prejudgment interest "is the *sole* basis for Plaintiff's alleged breach of contract" (emphasis in original)). To the contrary, Plaintiff *disputes* that he has received all ACV benefits owed to him under the terms of Travelers' policy. *See* Pl.'s Stmt. of Uncontroverted Material Facts ("PSOUF") at ¶¶ 17-19; Johnson Decl. at ¶ 18.

As the Missouri Court of Appeals unanimously held in *Franklin v. Lexington Ins. Co.*, an insurer breaches its insurance policy by withholding labor costs as depreciation from an ACV payment issued to its policyholder in the absence of language expressly permitting this practice:

> In the absence of an express policy provision that allows for it, labor does not fall within that which can be depreciated when an insured is entitled to an ACV payment…. [W]e hold that labor may not be depreciated under an insurance policy that does not define ACV or depreciation to expressly include labor depreciation.

652 S.W.3d at 303. Here, Travelers' policy contains no such provision. *See generally* Dkt. 12-2.

Plaintiff did not receive the full ACV payment to which he was entitled under *Franklin* and the terms of his Travelers insurance policy. Specifically, if Travelers had not depreciated labor, Plaintiffs' ACV payment would have increased by $2,207.95 for a total of $9,048.02. *See* PSOUMF ¶¶ 17-19. Travelers has only paid Plaintiff $8,685.00 to date, thereby underpaying Plaintiff the principal amount of $363.02. *Id.*; Dkt. 12-1, at ¶ 9; Kidd Dep. Ex. 12.

2

Because Travelers continues to improperly withhold $363.02 in future labor costs as "depreciation", Travelers' summary judgment motion concerning Plaintiff's entitlement to prejudgment interest must be denied. Resolution of the parties' legal dispute concerning the outstanding principal that Travelers continues to improperly withhold from Plaintiff (*i.e.*, $363.02) necessarily must precede consideration of Plaintiff's entitlement to the lost "time value" of money (*i.e.*, prejudgment interest) during the period of Travelers' improper withholding. As Judge Noce explains:

> When the issue is liability for a sum certain, it is proper for the court to calculate the prejudgment interest and direct the jury to return a verdict for that amount *if it finds the issue of liability in favor of the plaintiff.* Under such circumstances, the court might make such calculation and include it in an amount fixed in the verdict directing instruction. In such cases, the requirement for jury determination has been virtually eliminated, and it has been held proper for the trial court, after the jury has returned its verdict on the principal sum, to simply calculate the prejudgment interest and enter judgment therefor. *The same procedure has been approved when the amount due is clearly established by the evidence.*

30 Hon. David D. Noce, MO. PRAC., INS. LAW & PRACTICE § 5:17 (2d ed.) (Nov. 2022 Update) (hereinafter "MO. PRAC."); *see, e.g., Jo Ann Howard & Assocs., P.C. v. Cassity*, 2019 WL 6250827, at *1 (E.D. Mo. Nov. 22, 2019) (post-judgment recalculation of prejudgment interest award that was previously miscalculated after a bench trial and judgment entered in favor of plaintiffs); *Addison v. Jester*, 758 S.W.2d 454, 460 (Mo. Ct. App. 1988) (holding "Jester's claim to prejudgment interest on the award to her of excess interest paid and the penalty should have been allowed at the statutory rate of 9% … from the date of demand" *after* the court entered judgment in Jester's favor).

## II.      TRAVELERS' PREJUDGMENT INTEREST MOTION IS PREMATURE.

This Court need not address Travelers' prejudgment interest arguments because the record establishes Travelers underpaid Plaintiff the *principal* amount of what he was owed. Travelers

3

contends that the "only issue" to be addressed by its motion is whether "Plaintiff is entitled to interest for an alleged delay in payment of a portion of the amount paid" because the Ledfords were purportedly "paid every dime they were owed." Dkt. 12, at 4. Not so. The record establishes Travelers did *not* pay Plaintiff every dime he was owed, but $363.02 less. PSOUF at ¶¶ 17-19; Kidd Dep. Ex. 12; Johnson Decl. at ¶ 18. There is therefore no need to now address the propriety of awarding prejudgment interest where Travelers' *principal* amount of liability has yet to be determined by the Court.

This makes practical sense because "it is well-settled in this circuit that prejudgment interest accrues until judgment is entered by the Court." *Jacobson Warehouse Co., Inc. v. Schnuck Mkts., Inc.*, 2020 WL 833606, at *5 (E.D. Mo. Feb. 20, 2020); *Cassity*, 2019 WL 6250827, at *2 (collecting cases). As such, motions concerning prejudgment interest are typically resolved via post-trial motion after both liability and the amount of any unpaid principal are determined. *See In re: Packaged Seafood Prods. Antitrust Litig.*, --- F.Supp.3d ---, 2022 WL 11337564, at * 7 (S.D. Cal. Oct. 19, 2022) ("[W]hile determining the availability of prejudgment interest is possible at the summary judgment phase, a breadth of cases reserve that determination as a post-trial matter."); *Gorsha v. Clark*, 2022 WL 278973, at *10 (S.D. Ohio Jan. 31, 2022) ("The Clark Family insists that Plaintiffs' request for prejudgment interest is severely premature. The Court agrees. Plaintiffs' motion was filed prior to any money judgment in this case."). Further, the Eighth Circuit has confirmed that prejudgment interest can be awarded after final judgment pursuant to Federal Rule of Civil Procedure 59(e). *Cont'l Indem. Co. v. IPFS of New York, LLC*, 7 F.4th 713, 717-18 (8th Cir. 2021).

Travelers's prejudgment interest motion asks this Court to predict the outcome of liability and damages in its favor, on a record establishing it owes not just interest, but *principal* amounts

4

to Plaintiff. The Court should follow the breadth of authority and decline to engage in this academic exercise. *See, e.g., Academy Bank, N.A. v. Amguard Ins. Co.*, 2022 WL 2825887, at *5 n.5 (W.D. Mo. July 8, 2022) ("[T]he Court is not entering a monetary judgment at this time and *an interim ruling predicting that Plaintiff is entitled to prejudgment interest on a future judgment serves no purpose.*"); *Solaria Corp. v. GCL Sys. Integration Tech. Co., Ltd.*, 2022 WL 267444, at *14 (N.D. Cal. Jan. 28, 2022) ("GCL argues that … Solaria's request for prejudgment interest is premature because *such a request must be made by motion after a party prevails in a case*… The Court agrees with GCL. Solaria's request for prejudgment interest at this stage is premature."). Because the principal amount of still-withheld labor is unresolved, the Court need not reach the issues of Plaintiff's entitlement to and the calculation of prejudgment interest until *after* liability for the principal amount is determined.

## III.     PLAINTIFF IS ENTITLED TO PREJUDGMENT INTEREST.

### A.  Travelers Affirmatively Waived Its Policy's Proof Of Loss Condition And Related Loss Payment Condition.

This Court has previously held that prejudgment interest may be awarded when an insurer depreciates labor from an ACV payment. *See LaBrier v. State Farm Fire & Cas. Co*., 147 F. Supp. 3d 839, 852 (W.D. Mo. 2015).[2] In *LaBrier*, Judge Laughrey held that a labor depreciation claim "is liquidated, and is definite in amount and time" and allows for an award of prejudgment interest. *Id.* at 852.

Travelers attempts to work around the prejudgment interest holding in *LaBrier* by arguing that "[u]nder the plain terms of the Loss Payment clause, the 60-day deadline for a final payment

---

[2] While *LaBrier* was reversed on other grounds in *In re State Farm Fire & Cas. Co.*, 872 F.3d 567 (8th Cir. 2017), the Eighth Circuit's reversal was eventually rejected on-point by a unanimous Missouri Court of Appeals' panel in *Franklin*, which embraced Judge Laughrey's decision concerning insurance policy ambiguity.

was never met" and, therefore, Travelers obligation to make an ACV payment still has never arisen.

Dkt. 12, at 5.

Travelers' efforts to avoid *LaBrier* fail due to waiver. The Loss Payment provision in Travelers' policy is expressly dependent upon the proof of loss requirement in the policy. The proof of loss provision, in turn, is expressly conditioned upon Travelers' *request* for a sworn proof of loss. The policy provides:

> **Duties After Loss.** In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following conditions is prejudicial to us…
>
> **h.** Send to us, within 60 days after *our request*, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief ….

Dkt. 12-2, at 24 (bold emphasis in original, italicized emphasis added). The policy's Loss Payment clause then provides:

> **Loss Payment**. We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days *after we receive your proof of loss* and:
>
> **a.** Reach an agreement with you;[3]
> **b.** There is an entry of final judgment; or
> **c.** There is a filing of an appraisal award with us.

*Id.* at 26 (bold emphasis in original, italicized emphasis added).

---

[3] Travelers argues that it never reached a written or oral agreement with Plaintiff that it would pay a specific amount for damage to his home. Dkt. 12, at 3, 5. However, Travelers' own estimator testified that Travelers was required to pay Plaintiff, at a minimum, the ACV of his loss. *See* Kidd Dep. at 62:4-19; *see also* Dkt. 12-2, at 25 (requiring Travelers to pay full "actual cash value of the damage until actual repair or replacement is complete."). The ACV payment Travelers issued to Plaintiff reflects the *undisputed portion* of Plaintiff's claim. *See* Kidd Dep. at 65:16-20, 78:17-79:6. While Plaintiff disputes Travelers' right to withhold future repair labor as depreciation, Plaintiff never disputed Travelers' valuations for repair, labor, or materials, which Travelers, in turn, used to calculate Plaintiff's ACV payment. *See* Kidd Dep. at 65:16-20.

Travelers never requested a proof of loss form from Plaintiff,[4] and its failure to make any such request renders the Loss Payment provision nugatory under Missouri law. *See* PSOMF ¶ 24.[5] "The requirement of notice and proof of loss is a formal condition introduced into the policy solely for the benefit of the insurer, and it may be waived by it." *Burgess v. Mercantile Town Mut. Ins. Co.*, 89 S.W. 568, 571 (Mo. Ct. App. 1905). "The purpose of requiring proof of loss is to inform the insurance company of the essential facts in the case which are necessary for the determination of its liability. The company may insist upon a literal compliance with the provisions of the policy, *or it may act upon less if it so desires*." *Hughes v. Patriotic Ins. Co. of Am.*, 193 S.W.2d 958, 960 (Mo. Ct. App. 1946); *see also Miles v. Iowa Nat'l Mut. Ins. Co.*, 690 S.W.2d 138, 143 (Mo. Ct. App. 1984) ("In the case of the policy provision requiring the insured to furnish the company a proof of loss, the company must walk a straight and narrow path, else it will waive the requirement.").

An insurer therefore waives the proof of loss requirement by failing to request such proof. Steven Plitt, *et al*., 13A COUCH ON INS. § 195:24 (3d ed. June 2023 Update) ("[T]he insured is under no obligation to submit a proof of loss if the insurer never demands one."). Additionally, waiver results from an insurer acknowledging coverage, offering to pay, or paying the insured's loss partially or fully *before* the insurer has requested or received formal proof of loss. Allan D.

---

[4] The record establishes that Travelers does not request any proof of loss for most structural damage claims. *See* PSOUF at ¶ 27; Kidd Dep. at 69:2-21. This is not unusual. *See* Insurance Information Institute, *Settling Insurance Claims After a Disaster*, *at:* http://www.iii.org/article/settling-insurance-claims-after-a-disaster (last visited July 31, 2023) ("Some companies waive this [proof of loss] requirement after a disaster if you've met with the adjuster, especially if your claim is not complicated.").

[5] Even Travelers' representative who prepared the damage estimate for Plaintiff's claim did not see the relevance of the Loss Payment provision in the absence of a request for a proof of loss form. *See* Kidd Dep. at 83:23-84:9 ("Q: You're not sure whether or not this paragraph is relevant if you never request a proof of loss form? A: Legally speaking, no.").

Windt, 2 Ins. Claims & Disputes § 6:35 (6th ed. Feb. 2023 Update) ("[I]f an insurer pays or offers to pay part of an insured's claim before it has received a proof of loss statement, *it should ordinarily be deemed to have waived the proof of loss requirement*.").[6] Some courts refer to this as the most "conclusive" form of waiver. *Petrice v. Fed. Kemper Ins. Co.*, 260 S.E.2d 276, 278 (W. Va. 1979) ("[T]he most conclusive evidence of waiver is the tender of a settlement check by the insurance company" as "the [insurer] thereby expressed a complete willingness to ignore the provision requiring a sworn proof of loss").

Importantly, waiver of the proof of loss form renders *both* the proof of loss condition *and* Loss Payment condition irrelevant. "[T]he waiver of such … proofs operates to strike the condition requiring them out of the contract of insurance." *Burgess*, 89 S.W. at 571. "Once the company has waived the proof of loss condition, it may not revive the condition or withdraw its waiver and insist upon compliance with the provision without the insured's consent." *Miles*, 690 S.W.2d at 143.[7] In other words, if an insurer has enough information to accept *and* pay the ACV of a claim

---

[6] *See, e.g., Loewenstein v. Queen Ins. Co.*, 127 S.W. 72, 74-75 (Mo. 1909) (determining insurer waived right to demand proof of loss when it had information about the loss and told insured he would be paid, and recognizing that while "the law gives the insurer the right to demand proofs of loss, … it also gives him the right to waive that right"); *Cullen v. Ins. Co. of N. Am.*, 104 S.W. 117, 119 (Mo. Ct. App. 1907) ("It is well settled that a denial of liability on the policy, or any act or conduct on the part of the insurer making it apparent that the furnishing of proofs would be an unnecessary and nugatory formality, amounts to a waiver thereof."); *Burgess*, 89 S.W. at 571-73 (finding waiver when insured called insurance company two weeks after property loss, insured answered questions about the loss, and company's adjuster inspected the property and offered to settle a portion of the claim, leading insured to believe that formal proof of loss was unnecessary).

[7] Even if Travelers never waived its right to demand proof of loss (it did), the failure of an insured to file a proof of loss is relevant only if the insurer is prejudiced by such failure. *See, e.g., Pannell v. Mo. Ins. Guar. Ass'n*, 595 S.W.2d 339, 347-48 (Mo. Ct. App. 1980); *Schultz v. Queen Ins. Co.*, 399 S.W.2d 230, 235 (Mo. Ct. App. 1965); *see also* Dkt. 12-2, at 24 ("In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the [proof of loss duty] is prejudicial to us."). Here, Travelers has not asserted any prejudice resulting from the lack of formal proof of loss, nor could it since it is undisputed that Travelers never requested Plaintiff to submit a sworn proof of loss and it further confirmed that it had all the necessary information to adjust, pay, and close the claim at the time it issued Plaintiff's ACV payment. *See* PSOUMF ¶¶ 24-26.

without requesting a proof of loss, it cannot later defend unrelated misconduct (such as the depreciation of labor) on the grounds that the insurer did not receive a proof of loss. *See id.*[8]

Similarly, when an insurer waives the proof of loss condition, any loss payment provision that is triggered by the submission of a proof of loss form also becomes irrelevant. *See Arnold v. State Farm Fire & Cas. Co.*, 2020 WL 6879271, at *3 (S.D. Ala. Nov. 23, 2020) (rejecting motion to dismiss class-wide prejudgment interest claims under loss payment provisions in state where State Farm never requested proof of loss forms). For example, in *Central Bapt. Church of Albany Georgia, Inc. v. Church Mutual Ins. Co.*, 2020 WL 5496096 (M.D. Ga. Aug. 12, 2020), a property insurer waived its right to request a proof of loss form and instead made a deficient payment. The policy had a loss payment provision similar to Travelers' clause here. The court ignored the loss payment provision and held prejudgment interest ran from the date of the deficient claim payment. *Id*. at *2.

### B. Plaintiff Is Entitled To Prejudgment Interest From December 11, 2018—The Date Travelers Determined ACV Was "Due And Payable" And Breached The Contract—Through The Date Of Judgment.

Even if Travelers was not continuing to improperly withhold labor costs as depreciation, Plaintiff would still have a claim for prejudgment interest for the period of Travelers' improper withholding. In Missouri, there are two theories under which courts award prejudgment interest:

> One theory provides that an allowance of interest must be based upon either a statute or a contract, express or implied; except for actions in equity, in which case, it is a matter for the trial court's discretion. A second theory recognizes interest as an element of damages necessary to return plaintiffs to the status quo, compensating plaintiffs for the loss of use of money to which they were entitled.

---

[8] *See also Vala v. Pacific Ins. Co.*, 296 Ill. App. 3d 968, 976 (4th Dist. 1998) (Cook, J., dissenting) ("The purpose of a proof of loss is not to give the insurer an additional technical argument to be used after suit is filed."); *accord Cullen*, 104 S.W. at 119; *Burgess*, 89 S.W. at 571-73.

9

*Mitchell v. Residential Funding Corp.*, 334 S.W.3d 477, 508 (Mo. Ct. App. 2010) (quoting *Akers v. City of Oak Grove*, 246 S.W.3d 916, 922 (Mo. banc 2008) and recognizing the two theories work together "to some extent" by "liberally interpreting the statutes that authorize recovery of prejudgment interest"). The *Mitchell* court further held:

> Plaintiff's claim for pre-judgment interest is further buttressed by principles of equity and the policy behind prejudgment interest. The purpose of prejudgment interest is to fully compensate the plaintiffs for the time-value of money. Prejudgment interest also serves to promote settlement and deter unnecessary delay in litigation. Interest is awarded for the obligor's failure to pay money when payment is due, even though the obligor refuses payment because the obligor questions legal liability for all or portions of the claim.

*Mitchell*, 334 S.W.3d at 509 (recognizing that a purpose of Section 408.020 is to discourage insurance companies from creating unnecessary delays in paying claims that would allow them to benefit from the delays to the detriment of the insureds).

Section 480.020 provides in relevant part: "Creditors shall be allowed to receive interest at the rate of nine percent per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts . . . ." MO. REV. STAT. § 408.020. Section 408.020 requires prejudgment interest when a claim is liquidated or ascertainable by computation or recognizable standards. *Mitchell*, 334 S.W.3d at 509.[9] "When section 408.020 is applicable, an award of prejudgment interest is not discretionary; it is compelled." *Id.*

This principle especially makes sense in the context of insurance-related disputes. As one court aptly held:

---

[9] "The mere fact that a party denies liability or defends a claim against him, or even the existence of a bona fide dispute as to the amount of the indebtedness, does not preclude recovery of interest." MO. PRAC. § 5:17 and n.10 (collecting cases). Further, "exact calculation is not necessary for a claim to be liquidated." *Weinberg v. Safeco Ins. Co. of Ill.*, 913 S.W.2d 59, 62 (Mo. Ct. App. 1995) (holding that "for purposes of prejudgment interest the amount was sufficiently liquidated to warrant an award of such interest" even though the exact amount of principal damages owed could not be made until liability was first determined).

10

> If [the court] were to rule that interest could not be collected [after payment of the principal amount, the court] would effectively allow insurers to escape from a statutorily imposed obligation, without any remedy for [the insured], short of returning the check for the payment of the principal amount and filing a suit seeking to regain this principal along with the small amount of interest owed for the short period from the filing of proof of loss until the tender of the fact amount of the policy. It is unreasonable to expect a beneficiary or an insured to take such costly and time-consuming measures, that is, to forego immediate acceptance of the principal amount in order to pursue at his own expense his remedy for the relatively small additional amount of interest.

*Thomas v. Liberty Nat'l Life Ins. Co.*, 368 So.2d 254, 259 (Ala. 1979). Labor depreciation decisions are in accord. Numerous courts have held that policyholders have a legally protected interest in prejudgment interest for the time-periods in which their insurers improperly withheld labor costs from policyholder ACV payments.[10]

Because (1) Travelers waived the proof of loss requirement (making it impossible to calculate 60 days after receipt of the insured's proof of loss); (2) treated December 11, 2018 as the date its ACV obligation became due and payable; and (3) December 11, 2018 is the date on which Travelers breached the contract by issuing an ACV payment that improperly withheld future repair laobr, Plaintiff is entitled to prejudgment interest on all amounts of labor depreciation withheld

---

[10] *E.g., Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 463 (6th Cir. 2020) (recognizing plaintiffs sufficiently alleged injury-in-fact where "plaintiffs' complaint and damages formula include the claim that even those class members who recovered depreciated labor costs are eligible for damages in the form of prejudgment interest"), *aff'g Hicks v. State Farm Fire & Cas. Co.,* 2019 WL 846044, at *7 (E.D. Ky. Feb. 21, 2019) (holding plaintiffs had standing to pursue labor depreciation claims "whether or not they ultimately recovered all of [their] labor costs depreciated by State Farm. Plaintiffs seek both to recover unrecovered withheld labor depreciation and prejudgment interest for the time-value of labor depreciation withheld by State Farm"); *Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371, 376-77 (8th Cir. 2018) (rejecting insurer's argument that plaintiffs who ultimately received RCV payments suffered no damage; insured could properly seek interest on amounts withheld as labor depreciation); *Arnold v. State Farm Fire & Cas. Co.,* 2017 WL 5451749, at *2 (S.D. Ala. Nov. 14, 2017) (denying insurer's motion for interlocutory appeal and reaffirming insured had "a legally protected interest, by statute and by contract, in prejudgment interest" for period of labor depreciation withholding); *Arnold v. State Farm Fire & Cas. Co.*, 268 F. Supp. 3d 1297, 1302 (S.D. Ala. 2017) (holding "interest only" policyholder adequately alleged damage in the form of prejudgment interest resulting from insurer's failure to pay interest on labor costs previously withheld from ACV payment).

and any amount of labor depreciation later paid from December 11, 2018 through the date of final judgment. *See Travelers Prop. Cas. Co. of Am. v. Jet Midwest Technik, Inc.*, 2019 WL 2411443, at *1 (W.D. Mo. June 7, 2019) (recognizing, "[o]n a breach of contract, interest ordinarily runs from the date of the breach or the time when payment was due under the contract" and holding that interest accrued when "Defendant breached the insurance contract by failing to pay the additional premium."); ; *Miller v. Farm Bureau Town & Country Ins. Co. of Mo.,* 6 S.W.3d 432, 440 (Mo. Ct. App. 1999) (calculating prejudgment interest from the date plaintiffs' claim for ACV damages became payable under the policy terms).

Damages in this case are calculated using a single mathematical formula: "the amount of labor depreciation withheld from an outstanding ACV payment—'amounts calculated through Xactimate (using default settings)'—plus pre-judgment interest" calculated from issuance of the ACV payment through the date of final judgment. *Arnold*, 2020 WL 6879271, at *9.[11] In other words, Plaintiff is entitled to the principal amount of the unpaid labor depreciation multiplied by the applicable prejudgment interest rate and the length of time the amount is withheld.[12]

---

[11] As the *Arnold* court observed, this identical formula has been repeatedly approved by courts as an appropriate and feasible means of calculating labor depreciation damages. 2020 WL 6879271, at *9; *see Hicks*, 965 F.3d at 460; *Mitchell v. State Farm Fire & Cas. Co.,* 954 F.3d 700, 711-12 (5th Cir. 2020); *Dennington v. State Farm Fire & Cas. Co.*, 2016 WL 11596067, at *7 (W.D. Ark. Aug. 24, 2016), *aff'd sub nom Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371, 376-77 (8th Cir. 2018). Travelers did not provide any evidence supporting a different calculation of Plaintiff's loss (because there is none) and, as a result, the amount of Plaintiff's damages, including prejudgment interest, is "readily ascertainable by recognized standards." *Jet Midwest*, 2019 WL 2411443, at *2.

[12] Travelers' argument that Plaintiff contributed to the delay because Plaintiff did not provide a copy of the January 10, 2018 repair estimate to Travelers until February 22, 2018 is misleading. The full ACV amount must be paid under the policy regardless of whether Plaintiff repaired/replaced the damaged property. *See* Kidd Dep. at 61:13-62:19. The depreciated labor amount was owed in full on December 11, 2018—when Travelers itself determined its ACV payment was due. The timing of Plaintiff's submission of a repair estimate is irrelevant for purposes of ACV. *See Lafollette v. Liberty Mut. Ins. Co.,* 2017 WL 1026424 (W.D. Mo. Mar. 16, 2017) ("[T]he ACV payment belongs to the insured, does not have to be used for repairs, and *is not tied to repair costs*."); *Franklin*, 652 S.W.3d at 304 ("Lexington's obligation to pay Mrs. Franklin an ACV payment was not tied to the 'actual costs

Here, Plaintiff made a claim for ACV on December 3, 2018. On December 11, 2018, Travelers determined coverage existed and ACV was due to Plaintiff. Travelers issued an ACV payment to Plaintiff on that date and improperly withheld future labor costs as "depreciation" in breach of the policy. *Franklin*, 652 S.W.3d at 303. Prejudgment interest thus began to accrue as of December 11, 2018, *see Jet Midwest*, 2019 WL 2411443, at *1-2, and will continue to do so "until judgment is entered by the Court." *Jacobson Warehouse*, 2020 WL 833606, at *5.

### C. Section 408.020 Does Not Require A Demand.

Travelers briefly argues that prejudgment interest is precluded because Plaintiff failed to make a demand. Dkt. 12, at 6-7. "However, § 408.020 does not require a demand in this case because the amount of the debt at issue was set *in a written contract*." *Sisson v. Patel*, 2022 WL 497347, at *7 (W.D. Mo. Jan. 26, 2022). "This understanding of § 408.020 – that a demand is required for a debt due on an account but not for a payment specified in a written contract – is confirmed by numerous court decisions." *Id.* (citing several Missouri Supreme Court decisions). Here, the amount of the debt—*i.e.*, ACV—was specified in Travelers' policy. *See* Dkt. 12-2, at 25 (requiring Travelers to pay full "actual cash value of the damage until actual repair or replacement is complete.").

## IV. TRAVELERS IS NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S DECLARATORY JUDGMENT CLAIM.

Plaintiff states a viable claim for breach of contract, and it is well-established that "[t]he existence of another adequate remedy does *not* preclude a judgment for declaratory relief in cases where it is appropriate." FED. R. CIV. P. 57. While Plaintiff's breach of contract claim seeks money damages, the declaratory relief claim is broader in that it seeks a declaration concerning the proper

---

of repair' language which is only contained in the policy's RCV provision… Mrs. Franklin was under no obligation to make the repairs to the property.").

policy interpretation *and* contemplates a prospective prohibition on the offending practices. Dkt. 1, at ¶¶ 69-70 and Prayer for Relief at ¶¶ 2-4.

Where, as here, "the complaint seeks something in addition to a declaration that the contract was breached, declaratory relief may be appropriate." *Nat'l Real Estate Ins., Grp., LLC v. CRC Ins. Servs., Inc.*, 2019 WL 5688238, at *7 (W.D. Mo. June 26, 2019). For instance, a claim for declaratory relief is *not* duplicative of a breach of contract claim when it addresses ongoing and future duties under a contract, as is the case here. *Id.* ("[T]he Court will exercise its discretion and allow the declaratory judgment claim to proceed" where "Plaintiffs seek to delineate the rights and responsibilities of the parties under the Original Policy and Subsequent Policy, and not just whether the policies have been breached.").[13] Because the two claims seek distinctly different forms of relief, Plaintiff can assert both simultaneously. *Id.*[14] In fact, and despite Travelers' assertion to the contrary (*see* Dkt. 12, at 7-8), "were the Court to issue [a declaratory judgment], it might well delineate all … parties' rights and obligations, as well as resolve plaintiff's breach of

---

[13] *See also HHCS Pharm., Inc. v. Express Scripts, Inc.*, 2016 WL 7324968, at *5 (E.D. Mo. Dec. 16, 2016) (denying motion to dismiss declaratory judgment claim because although "plaintiff's claims for declaratory judgment and breach of contract are closely related, … the declaratory judgment claim … 'will establish what the Defendants' obligations are while the breach of contract claim will resolve whether Defendants breached those obligations in a particular instance.'"); *see also Churchill in Crestwood, LLC v. Schwartz*, 2011 WL 7109212, at *2 (W.D. Mo. Jan. 27, 2011) (denying summary judgment on plaintiff's claim for a declaratory judgment declaring plaintiff's rights and obligations under the contract).

[14] *See also Stein for Halpern Ins. Trust v. Phoenix Life Ins. Co.*, 2018 WL 3375091, at *2 (E.D. Mo. July 11, 2018) ("[T]he mere fact that the claims for declaratory judgment and breach of contract are closely related—even where the declaratory judgment claim 'encompasses' the breach of contract claim—does *not* require dismissing the declaratory judgment claim…."); *Flowshare, LLC v. TNS, US, LLC*, 2017 WL 3174321, at *6 (E.D. Mo. July 26, 2017) (same holding where "declaratory judgment claim seeks the additional relief of determining the parties' rights and responsibilities under the contract, as well as the rights, obligations, and liabilities of the parties with regard to future conduct.").

14

contract claim. This goes well beyond any pure contract remedy." *Cystic Fibrosis Pharm., Inc. v. Express Scripts, Inc.*, 2016 WL 7242163, at *5 (E.D. Mo. Dec. 15, 2016).

In labor depreciation cases, courts have repeatedly refused to dismiss declaratory judgment claims on precisely these grounds.[15] Because Plaintiff's breach of contract claim will only address Travelers' past breaches and will, therefore, not settle all the contractual issues for which Plaintiff seeks declaratory relief, the declaratory relief count should proceed. *Nat'l Real Estate*, 2019 WL 5688238, at *7. Moreover, courts within the Eighth Circuit, including this Court, have refused to dismiss claims for declaratory relief concerning an insurer's ongoing labor depreciation practices prior to class certification. *See LaBrier*, 147 F. Supp. 3d at 851-52 (Laughrey, J.) (denying insurer's motion to dismiss plaintiff's claim for declaration that insurer's practice of depreciating labor is contrary to its insurance policy because the "Court cannot say at this stage of the litigation whether there will be class certification or if there is, whether a declaratory judgment would serve a useful purpose"), *rev. on other grounds*, 872 F.3d 567 (8th Cir. 2017).[16] To hold otherwise would unfairly prejudice Plaintiff's efforts to certify the alleged putative class.

## CONCLUSION

Based on the foregoing, Travelers' motion should be denied in its entirety.

---

[15] *Cedarview Mart, LLC v. State Auto Prop. & Cas. Co.*, 2021 WL 1206597, at *5 (N.D. Miss. Mar. 30, 2021) (denying motion to dismiss labor depreciation-declaratory judgment claim as duplicative of breach of contract claim where the request for declaratory relief is broader); *Shields v. Metro. Prop. & Cas. Ins. Co.*, 2020 WL 7338065, at *5 (N.D. Miss. Dec. 14, 2020) (same); *Huey v. Allstate Vehicle & Prop. Ins.*, 2020 WL 5370950, at *4 (N.D. Miss. Sept. 8, 2020) (same).

[16] *Accord Wilcox v. State Farm Fire & Cas. Co.*, 2015 WL 927093, at *8-9 (D. Minn. Jan 15, 2015) (report and recommendation rejecting insurer's argument that declaratory judgment should be dismissed because it was duplicative of plaintiffs' breach-of-contract claim), *adopted in part, rejected in part by* 2015 WL 927342, at *8 (D. Minn. Mar. 4, 2015) (adopting recommendation to deny motion to dismiss declaratory relief claim "[b]ecause it is possible that the Court could certify the putative class as one seeking declaratory or injunctive relief under Rule 23(b)(2).").

15

Dated:  August 1, 2023

Respectfully submitted,

By: /s/ T. Joseph Snodgrass
T. Joseph Snodgrass*
SNODGRASS LAW LLC
100 S. Fifth Street, Suite 800
Minneapolis, MN 55402
Tel: (612) 448-2600
jsnodgrass@snodgrass-law.com

David T. Butsch #37539
Christopher E. Roberts #61895
BUTSCH ROBERTS & ASSOCIATES LLC
231 South Bemiston Ave., Suite 260
Clayton, MO 63105
Tel: (314) 863-5700
Butsch@ButschRoberts.com
Roberts@ButschRoberts.com

J. Brandon McWherter*
MCWHERTER SCOTT BOBBITT PLC
341 Cool Springs Blvd., Suite 230
Franklin, TN 37067
Tel: (615) 354-1144
brandon@msb.law

Erik D. Peterson*
ERIK PETERSON LAW OFFICES
110 West Vine Street, Suite 300
Lexington, KY 40507
Tel: (800) 614-1957
erik@eplo.law

*Attorney for Plaintiff*

* admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2023, a copy of the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system and served upon all counsel of record.

/s/T. Joseph Snodgrass

16