# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

KEVIN LEDFORD, individually, and on behalf )
of all others similarly situated, )
                      )
        Plaintiff, )
                      )
v. )        Case No. 2:23-CV-04079
                      )
TRAVELERS HOME AND MARINE )
INSURANCE COMPANY, )
                      )
        Defendant. )
                      )

## DEFENDANT TRAVELERS HOME AND MARINE INSURANCE COMPANY'S
## REPLY SUGGESTIONS IN SUPPORT OF
## ITS MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

RESPONSE TO PLAINTIFF'S CONCISE STATEMENT OF UNCONTROVERTED
MATERIAL FACTS PURSUANT TO LOCAL CIVIL RULE 56.1(b)(2) .............................v

ARGUMENT ..................................................................................................................1

    I.   PLAINTIFF IS NOT OWED THE $363.02 CLAIMED ........................................................2

    II.  PLAINTIFF IS NOT ENTITLED TO INTEREST ON ANY ALLEGEDLY
        LATE PAYMENT ....................................................................................................4

    III. PLAINTIFF IS NOT ENTITLED TO DECLARATORY RELIEF ....................................8

CONCLUSION .............................................................................................................10

CERTIFICATE OF SERVICE .....................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Auto-Owners Ins. Co.*,
No. 21-CV-2003, 2021 WL 6622511 (C.D. Ill. Oct. 25, 2021)............................................5, 6

*Amerisure Mut. Ins. Co. v. Maschmeyer Landscapers, Inc.*,
2007 WL 2811080 (E.D. Mo. Sept. 24, 2007)..........................................................................9

*Arnold v. State Farm Fire & Cas. Co.*,
2017 WL 5451749 (S.D. Ala. Nov. 14, 2017)............................................................................8

*Arnold v. State Farm Fire & Cas. Co.*,
2020 WL 6879271 (S.D. Ala. Nov. 23, 2020)............................................................................6

*Arnold v. State Farm Fire & Cas. Co.*,
268 F. Supp. 3d 1297 (S.D. Ala. 2017)......................................................................................8

*BBMB, Inc. v. Pennsylvania Lumbermens Mut. Ins. Co.*,
2012 WL 2848675 (E.D. Mo. July 11, 2012).............................................................................8

*Burgess v. Mercantile Town Mut. Ins. Co.*,
89 S.W. 568 (Mo. App. 1905) ...................................................................................................6

*Cedarview Mart, LLC v. State Auto Prop. & Cas. Co.*,
2021 WL 1206597 (N.D. Miss. Mar. 30, 2021) ......................................................................10

*Cento v. Allstate Prop. & Cas. Ins. Co.*,
2014 WL 4641155 (E.D. Mo. Sept. 16, 2014)...........................................................................3

*Central Baptist Church of Albany Ga. Inc. v. Church Mut. Ins. Co.*,
2020 WL 5496096 (M.D. Ga. Aug. 12, 2020)...........................................................................6

*Cystic Fibrosis Pharmacy, Inc. v. Express Scripts, Inc.*,
2016 WL 7242163 (E.D. Mo. Dec. 15, 2016) .........................................................................10

*Feldmann Imports Inc. v. Mercedes-Benz USA, LLC*,
506 F. Supp. 3d 687 (D. Minn. 2020)........................................................................................9

*Franklin v. Lexington Insurance Co.*,
652 S.W.3d 286 (Mo. App. W.D. 2022).....................................................................................3

*Klamen v. Genuine Parts Co.*,
848 S.W.2d 38 (Mo. App. E.D. 1993) .......................................................................................6

Case 2:23-cv-04079-BCW   Document 27   Filed 08/15/23   Page 3 of 26

*Labrier v. State Farm Fire & Cas. Co.*,
  147 F. Supp. 3d 839 (W.D. Mo. 2015) ...............................................................7, 10

*Lafollette v. Liberty Mut. Fire Ins. Co.*,
  2017 WL 1026424 (W.D. Mo. Mar. 16, 2017)................................................................3

*Macheca Transp. Co. v. Philadelphia Indem. Ins. Co.*,
  No. 4:04-CV-178 CEJ, 2012 WL 5948900 (E.D. Mo. Nov. 28, 2012), aff'd in
  part, rev'd in part, 737 F.3d 1188 (8th Cir. 2013) ......................................................6, 7

*Miles v. Iowa Nat'l Mut. Ins. Co.*,
  690 S.W.2d 138 (Mo. App. W.D. 1985).........................................................................6

*Mitchell v. Residential Funding Corp.*,
  334 S.W.3d 477 (Mo. App. W.D. 2010)..........................................................................8

*Nat'l Real Est. Ins., Grp., LLC v. CRC Ins. Servs., Inc.*,
  2019 WL 5685238 (W.D. Mo. June 26, 2019) ...........................................................9, 10

*Nelson v. Farm Bureau Town and Country Ins. Co. of Mo.*,
  560 S.W.3d 81 (Mo. App. W.D. 2018)......................................................................5, 6, 7

*Rainey v. Standard Guar. Ins. Co.*,
  2020 WL 5536486 (W.D. Mo. Sept. 15, 2020) ...............................................................9

*Shields v. Metro. Prop. & Cas. Ins. Co.*,
  2020 WL 7338065 (N.D. Miss. Dec. 14, 2020)............................................................10

*Sisson v. Patel*,
  2022 WL 497347 (W.D. Mo. Jan. 26, 2022) ..................................................................7

*Spink v. Mercury Ins. Co.*,
  260 S.W.2d 757 (Mo. App. 1953) ..................................................................................5

*Stein for Halpern Ins. Tr. dated June 7, 1994 v. Phoenix Life Ins. Co.*,
  2018 WL 3375091 (E.D. Mo. July 11, 2018) ...............................................................10

*Est. of Stoick ex rel. Spry v. McCorvey*,
  2011 WL 3419939 (D. Minn. July 29, 2011) ..................................................................9

*In re State Farm Fire & Cas. Co.*,
  872 F.3d 567 (8th Cir. 2017) ..........................................................................................4

*STIM, LLC v. Aecom Tech. Servs., Inc.*,
  2016 WL 1298145 (W.D. Mo. Apr. 1, 2016) ..................................................................8

*Three Rivers Rock Co. v. M/V Martin*,
  401 F. Supp. 15 (E.D. Mo. 1975)....................................................................................4

iii

*Transamerica Ins. Co. v. Pa. Nat'l Ins. Cos.*,
    908 S.W.2d 173 (Mo. App. E.D. 1995) ....................................................................7

*Travelers Prop. Cas. Co. of Am. v. Jet Midwest Technik, Inc.*,
    2019 WL 2411443 (W.D. Mo. June 7, 2019) ...........................................................8

*Watters v. Travel Guard Int'l*,
    136 S.W.3d 100 (Mo. App. E.D. 2004) ...................................................................7

**Other Authorities**

Fed. R. Civ. P. 1 .............................................................................................................5

## RESPONSE TO PLAINTIFF'S CONCISE STATEMENT OF UNCONTROVERTED MATERIAL FACTS PURSUANT TO LOCAL CIVIL RULE 56.1(B)(2)

Travelers Home and Marine Insurance Company (Travelers) denies the statement in Plaintiff's heading numbered "I," asserting that "by depreciating labor costs, Travelers paid the Ledfords $2,207.95 less than the ACV payment to which they were entitled." (All caps removed.) This is an erroneous conclusion of law for two reasons, as further explained in the Argument section below. First, Plaintiff elected to make a claim for replacement cost value (RCV) coverage, requesting payment based on a contractor's invoice. Accordingly, Plaintiff is entitled under the Policy to recover no more than "[t]he necessary amount actually spent to repair or replace the damaged building." (Policy, ECF Doc. 12-2, at p. 25 of 48.) Undisputedly, that amount was $10,185, minus the deductible of $1,500, for a total of $8,685, which is what Travelers paid. (Plaintiffs' Responses to Defendant's Material Facts, ¶¶ 5-7.) Second, the *actual* (not estimated) RCV of the damage to the Ledfords' roof was undisputedly $10,185, based on the contractor's invoice. (*Id.* ¶ 5.) As explained below, based on the analysis of Plaintiff's expert, nothing more would be owed for ACV if depreciation were applied only to materials, using the *actual* RCV.

1.      Connor Kidd is an employee of Travelers Indemnity. (Kidd Dep. at 6:11-6:14.)

**RESPONSE:**  Admitted that Connor Kidd is an employee of The Travelers Indemnity Company, but that is immaterial to this motion.

2.      Mr. Kidd commonly handled claims on behalf of Defendant Travelers Home and Marine Insurance Company and other Travelers entities. (*Id.* at 10:20-12:14.)

**RESPONSE:**  Admitted but immaterial to this motion.

3.      Mr. Kidd adjusted the Ledfords' structural damage claim. (Dkt. 12-1, ¶ 5.)

**RESPONSE:** Admitted.

4.    Mr. Kidd confirmed coverage existed for the Ledfords' structural damage claim. (Kidd Dep. at 36:24-37:21.)

**RESPONSE:** Admitted.

5.    The minimum amount owed under the Ledfords' policy for structural loss was the ACV of the loss. (*Id.* at 61:2-62:19.)

**RESPONSE:** Denied. This is not an issue of fact but rather a question of law, and Plaintiff's assertion is an incorrect conclusion of law. The Ledfords completed the repairs of their premises (the "Premises") before filing suit. (Plaintiff's Responses to Defendant's Material Facts, ¶¶ 5-7.) The Policy provides that "*[o]nce actual repair or replacement is complete*, we will settle the loss" "at replacement cost without deduction for depreciation." (Policy, ECF Doc. 12-2, at p. 25 of 48 (emphasis added).) The Policy further specifies that Travelers "will pay the cost to repair or replace, after application of any deductible and without deduction for depreciation, but not more than the least of the following amounts … [t]he necessary amount actually spent to repair or replace the damaged building." (*Id.*) While the Policy provided the Ledfords with an *option* to "disregard the replacement cost loss settlement provisions and make claim under this policy to buildings on an actual cash value basis" (*id.*), the Ledfords did *not* exercise this option. Instead, they requested coverage on a RCV basis, which was paid. (Plaintiff's Responses to Defendant's Material Facts, ¶¶ 5-7.) There is no dispute that Travelers has paid the "necessary amount actually spent to repair or replace" the damage to Plaintiff's Premises. (*Id.*) In addition, based on the actual RCV of $10,185 (what the Ledfords' contractor actually charged to perform the repairs), applying depreciation to only the materials portion of the contractor's estimate, the Ledfords would not have received any more money than what Travelers paid. (Kidd Dep. at 86:9-18; *see also* Argument Section I below.)

6.     Mr. Kidd calculated the ACV of the Ledfords' property damage using only the "replacement cost less depreciation" methodology ("RCLD" methodology). (*Id.* at 33:12-33:18, 33:24-34:3, 40:11-40:15.)

**RESPONSE:** Admitted that Mr. Kidd prepared an estimate of the ACV of the covered damage to the Ledfords' premises using the replacement cost less depreciation method, which Mr. Kidd further testified was "kind of interchangeable with fair market value." (Pl. Ex. 1 at 33:19-23.)

7.     The RCLD methodology determines the replacement cost of a covered loss and then applies depreciation to the total replacement cost. The remaining amount after applying depreciation is the ACV of the claim. (*Id.* at 33:12-34:3.)

**RESPONSE:** Admitted that the replacement cost less depreciation (RCLD) methodology for estimating ACV involves estimating the RCV of covered damage to property and then subtracting depreciation to estimate the ACV.

8.     If a Travelers policy contains language stating that Travelers must pay the policyholder ACV, then Travelers uses the RCLD methodology to determine the ACV of the claim. (*Id.* at 41:2-41:8.)

**RESPONSE:** Admitted that Mr. Kidd testified that he has always used the RCLD methodology to estimate ACV. Denied that this is the only methodology used by Travelers, but that is immaterial to this motion. The cited deposition testimony also does not establish that this is the only methodology used by Travelers.

9.     Mr. Kidd was never trained to calculate the ACV of property damage through any methodology other than the RCLD methodology. (*Id.* at 39:15-40:3.)

**RESPONSE:** Admitted but immaterial to this motion.

10. Mr. Kidd exclusively used Xactimate® software to estimate structural property claims. (*Id.* at 18:3-18:12, 19:7-19:13, 34:4-35:7, 35:15-35:18.) Xactimate® software determines the ACV for structural property damage exclusively through the RCLD methodology. (Johnson Decl. at ¶ 10.)

**RESPONSE:** Admitted but immaterial to this motion, and Travelers notes that the RCLD methodology (also known as the cost approach) is a method of estimating fair market value. (Kidd Dep. at 33:19-34:3.)

11. An insurance company can take the coverage position that it will withhold future repair labor costs from an ACV payment under the RCLD methodology by "depreciating labor." In Xactimate®, this coverage position is expressed by using the "depreciation option settings" in Xactimate®. A screen shot of these settings is set forth below: [Screen shot omitted.] (Johnson Decl. at ¶ 13.)

**RESPONSE:** Admitted only that Xactimate software has depreciation option settings that include "Depreciate Material," "Depreciate Non-Material," "Depreciate Removal," "Depreciate Overhead and Profit" and "Depreciate Sales Tax." Travelers denies the remainder of this paragraph, which consists of characterizations. When the "Depreciate Non-Material" option is selected, that is part of accurately estimating the ACV of covered damage, not "withhold[ing] future repair labor costs." To the extent the Johnson declaration purports to reference Travelers' practices, there is no foundation for him to testify on that.

12. The withholding of future repair labor costs from an ACV payment is a function of affirmatively using the "Depreciation Non-Material," "Depreciate Removal," or "Depreciate

Overhead and Profit" functions. Specifically, these functions will withhold labor from an ACV payment. (Johnson Decl. at ¶ 14; *see also* Kidd Dep. at 41:10-41:19, 44:11-45:16.)

**RESPONSE:** Admitted only that using the "Depreciation Non-Material" and "Depreciate Removal" settings in Xactimate will result in the application of estimated depreciation to the estimated labor costs component in estimating RCV, and possibly other items. Admitted that using the "Depreciate Overhead and Profit" setting in Xactimate will result in the application of depreciation to the general contractor overhead and profit component in estimating RCV. Travelers denies the remainder of this paragraph, which consists of characterizations. When the options referenced in Paragraph 12 are selected, that is part of accurately estimating the ACV of covered damage, not "withholding of future labor costs" or "withhold[ing] labor."

13.      It is simple to determine the amount of labor depreciation withheld on any given property insurance claim with an .ESX file. Utilizing Xactimate® software, a user can open the .ESX file that contains all germane claim data information. Next, the user can toggle off the boxes labeled "Depreciate Non-Material" and/or "Depreciate Removal" and/or "Depreciate Overhead and Profit." Finally, the user can compare the differences between the original ACV estimate and the ACV estimate without the labor depreciation settings applied. Again, the three steps for determining the principal amount of improper labor withholding are very simple: (1) note the Net Actual Cash Value Payment at the time of settlement; (2) uncheck the boxes labeled Depreciate Non-Material and/or Depreciate Removal and/or Depreciate Overhead and Profit; and (3) determine the difference between the two ACV figures. (Johnson Decl. at ¶ 15.)

**RESPONSE:** Travelers admits only that it is possible to use the Xactimate software to take an estimate that has been created using certain depreciation settings, change those settings,

produce a revised estimate prepared with the revised depreciation settings, and compare those two estimates. Travelers denies the remainder of this paragraph, which consists of characterizations, such as that there was "improper labor withholding." Travelers further maintains that this paragraph is not material to Travelers' motion.

14.     Travelers produced a copy of the .ESX file to Plaintiff in this lawsuit. (Johnson Decl. at ¶ 16.)

**RESPONSE:** Admitted.

15.     On December 11, 2018, Travelers made an ACV payment to the Ledfords for $6,840.07 based upon an Xactimate® estimate. (Kidd Dep. at 52:2-52:10.)

**RESPONSE:** Admitted.

16.     Travelers applied the "Depreciate Non-Material" depreciation option setting to the Xactimate® estimate used to calculate the Travelers' December 11, 2018 ACV payment to the Ledfords. (Johnson Decl. at ¶ 17; Kidd Dep. at 52:12-53:1, 53:19-54:3.)

**RESPONSE:** Admitted.

17.     Travelers withheld $2,207.95 in labor costs as depreciation from the Ledfords' December 11, 2018 ACV payment. Specifically, if Travelers had turned off the depreciation option setting labeled "Depreciate Non-Material," the ACV of the Ledfords' loss would have increased from $6,840.07 to $9,048.02, and the ACV payment to the Ledfords would have increased by $2,207.95. (Johnson Decl. at ¶ 18; Kidd Dep. at 56:12-56:22, 86:22-87:4.)

**RESPONSE:** Admitted only that the amount of depreciation categorized by Xactimate as "Depreciate Non-Material" on the December 11, 2018 estimate prepared by Travelers on the Ledfords' claim was $2,207.95. Travelers denies the remainder of this paragraph as hypothetical and immaterial to this motion. *See* Argument Section I below. In addition, the deposition

testimony does not support Plaintiff's position that additional money is owed. Based on the actual RCV of $10,185 (what the Ledfords' contractor actually charged to perform the repairs), applying depreciation to only the materials portion of the contractor's estimate, the Ledfords would not have received any more money than what Travelers paid. (Kidd Dep. at 86:9-18; *see also* Argument Section I below.)

18.     If Travelers had not depreciated labor costs, the Ledfords would have received more than Travelers ever paid on the claim. (Kidd Dep. at 57:25-58:4, 86:22-87:4.)

**RESPONSE:** Denied and immaterial to this motion. If Travelers had estimated the RCV more accurately, consistent with what the Ledfords' contractor actually charged to perform the repairs, and applied depreciation to only the materials portion of the contractor's estimate, the Ledfords would not have received any more money than what Travelers paid. (Kidd Dep. at 86:9-18; *see also* Argument Section I below.)

19.     On February 22, 2019, Travelers paid Plaintiff only $1,844.93 of the $2,207.95 outstanding depreciated labor costs, leaving an unpaid balance of $363.02. (Dkt. 12-2, at ¶ 9; Kidd Dep. Ex. 12 (illustrating unpaid principal after February 22, 2019 = $363.02).)

**RESPONSE:** Admitted only that on February 22, 2019, Travelers made a payment to the Ledfords in the amount of $1,844.93. Travelers denies that there is an "unpaid balance," which is a question of law, not an issue of fact. (*See* Argument Section I below.)

20.     While the Ledfords dispute Travelers' right to categorize and withhold future repair labor as depreciation, the Ledfords never disputed the values Travelers calculated for repair, labor, or materials. (Kidd Dep. at 65:16-65:20.)

**RESPONSE:** Admitted that the Ledfords did not dispute the amount estimated by Travelers for ACV. The Ledfords, however, subsequently chose to make a claim on an RCV

basis, providing their contractor's invoice to Travelers. The contractor's invoice totaled $10,185, lower than Travelers' RCV estimate of $12,540.99. (Plaintiff's Response to Defendant's Material Facts, ¶¶ 3, 5.)

Plaintiff's Concise Statement of Uncontroverted Material Facts includes a heading "II" which states: "The Ledfords complied with all policy conditions, and Travelers affirmatively waived all proof of loss conditions." (All caps removed.) Travelers denies this statement as an argumentative legal argument, although Travelers does not contend that the Ledfords breached a policy condition or that they were required to submit a proof of loss.

21.     The Ledfords complied with all of the policy conditions. (Kidd Dep. at 38:20-39:6.)

**RESPONSE:** Admitted, although this is a question of law not an issue of fact.

22.     The Ledfords' policy required them to submit a signed proof of loss only if requested by Travelers. Section I – Conditions of the Ledfords' policy states in part:

1. **Duties After Loss.** In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following conditions is prejudicial to us…
    h.     Send to us, within 60 days *after our request*, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief …

(Dkt. 12-2, at 24.)

**RESPONSE:** Admitted that the language quoted is contained in the Policy, except that the relevant provision is numbered "2," not "1," and Plaintiff has added italics to the words "after our request." This paragraph is immaterial to Travelers' motion.

23.     At all relevant times, Travelers was aware it could have requested a sworn proof of loss form [sic] from the Ledfords prior to making any ACV payments. (Kidd Dep. at 72:3-72:8, 80:11-82:11.)

**RESPONSE:** Admitted but immaterial to this motion.

24.     Travelers never requested a proof of loss form from the Ledfords prior to making its ACV payment to the Ledfords. (*Id.* at 69:22-69:24.)

 **RESPONSE:** Admitted but immaterial to this motion.

25.     Travelers was satisfied with the evidence that was visibly available to Mr. Kidd when he visited the Ledfords' home, and that the property damage Mr. Kidd observed was proof of the Ledfords' loss. (*Id.* at 72:13-72:25.) Mr. Kidd required no further information to accept or deny the Ledfords' claim. (*Id.* at 76:25-77:4.)

 **RESPONSE:** Admitted but immaterial to this motion.

26.     Upon visiting the Ledfords' home, Mr. Kidd confirmed that there was damage caused by a covered peril, prepared the Ledfords' Xactimate® estimate, issued the Ledfords' ACV payment, sent the Ledfords a letter, and then closed the claim pending a final invoice that same day. (*Id.* at 74:22-76:9, 76:25-77:14.)

**RESPONSE:** Admitted.

27.      Travelers does not request proof of loss forms from policyholders for most claims. (*Id.* at 69:15-69:18.)

**RESPONSE:** Admitted but immaterial to this motion.

28.     Travelers' decision to withhold labor as depreciation was unrelated to the failure of Travelers to request a proof of loss form from the Ledfords. (*Id.* at 70:21-70:25.)

**RESPONSE:** Admitted but immaterial to this motion.

## **ARGUMENT**

Plaintiff claims entitlement to an additional $363.02 on a basis that is fundamentally different from what has been alleged in numerous other similar putative class actions involving so-called "labor depreciation." In those cases, the plaintiffs' claims were paid on an actual cash value (ACV) basis, and they either chose not to make the repairs or chose not to submit a claim for replacement cost value (RCV). Instead, they filed suit claiming that their ACV payment was too low because depreciation was allegedly improperly applied to labor costs. Here, in contrast, the Ledfords submitted their contractor's invoice—choosing to make a claim for RCV benefits— and were paid the full RCV of the repairs. Plaintiff's arguments that Travelers underestimated the ACV are irrelevant, and the breach of contract claim fails on two grounds: (1) under the terms of the Policy, Plaintiff cannot recover more than he actually spent after he elected to make an RCV claim; and (2) even if Plaintiff could sue for more money on an ACV basis (which he cannot), based on the *actual* RCV, after subtracting for depreciation in the same manner that Plaintiff's expert did, Plaintiff would not be owed more money on an ACV basis.

Given that Plaintiff is not owed any more money under the Policy, his only potential claim is for prejudgment interest. That claim fails for two reasons. First, under the Policy's Loss Payment provision, payment was not due until 60 days after an agreement was reached on the amount of loss, a final judgment was entered or an appraisal award made. None of those events occurred. Second, under well-settled law, prejudgment interest does not begin to accrue until the plaintiff makes a demand for payment. Plaintiff never demanded a higher ACV payment before suit was filed, and his claim for an RCV payment was immediately paid before suit.

Lastly, Plaintiff's attempt to salvage his declaratory judgment claim is without merit. The declaratory judgment claim is based on the very same allegation as the breach of contract claim,

and is therefore duplicative. In addition, given that the Policy expired in 2018, any declaratory relief would be an advisory opinion, applicable only to a potential future claim if Plaintiff remains insured by Travelers and has another loss under a policy with the same wording that is adjusted in a similar way. The Court cannot properly issue such an advisory opinion.

## I.    PLAINTIFF IS NOT OWED THE $363.02 CLAIMED

Plaintiff claims entitlement to $363.02 on a purely hypothetical basis: that if Travelers had used different settings in the Xactimate software in preparing the initial estimate on the Ledfords' insurance claim, that estimate theoretically would have been higher by $363.02. (Opp. at xi ¶¶ 17-19, 1-2.) This claim fails for two independently dispositive reasons.

First, the Policy does not allow Plaintiff to rewind the clock and seek additional money an ACV basis after recovering in full on a RCV basis. The Policy provided the Ledfords with the *option* to "disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis." (Policy, ECF Doc. 12-2, at 25.) But the Ledfords did *not* choose to exercise that option. Instead, they chose to submit their contractor's invoice, seeking payment on an RCV basis. (ECF Doc. 12-1 ¶ 8.) The Policy unambiguously provides that "*[o]nce actual repair or replacement is complete*," Travelers will pay no more than "[t]he necessary amount actually spent to repair or replace the damaged building," less the deductible, as follows:

> **Loss Settlement.**  … Covered property losses are settled as follows:
> …
> **b.**  Buildings covered under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:
> **(1)** If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, *we will pay the cost to repair or replace, after application of any deductible and without deduction for depreciation, but not more than the least of the following amounts*:
> **(a)** The limit of liability under this policy that applies to the building;

> **(b)** The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or
>
> **(c)** *The necessary amount actually spent to repair or replace the damaged building.*
>
> …
>
> **(4)** We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. *Once actual repair or replacement is complete, we will settle the loss as noted in **b.(1)** and **b.(2)** above*.

(Policy, ECF Doc. 12-2, at 25 (italics added).)

Here, there is no dispute that the Ledfords chose to request an RCV payment. *See Lafollette v. Liberty Mut. Fire Ins. Co.*, 2017 WL 1026424, at *9 (W.D. Mo. Mar. 16, 2017) (explaining that under same policy provision "it is the choice of the *policyholder* whether to pursue an ACV or RCV payment"). There is also no dispute that "actual repair or replacement is complete." (Policy, ECF Doc. 12-2, at 25.) Thus, under the plain language of the Policy, the Ledfords cannot recover more than "[t]he necessary amount actually spent," less the deductible, which is what Travelers has paid. *See*, *e.g.*, *Cento v. Allstate Prop. & Cas. Ins. Co.*, 2014 WL 4641155, at *8 (E.D. Mo. Sept. 16, 2014) (granting insurer's motion for summary judgment where it paid actual cost of repairs based on contractors' estimates).[1]

Second, even if the Ledfords could somehow disavow their choice to make an RCV claim after asking for payment based on their contractor's invoice and accepting the RCV payment (and they cannot), the Ledfords still could not recover more than *actual* ACV, which must be based on *actual* RCV. Travelers estimate was just that—an *approximation* of what it *might* cost to repair the damage to the Ledfords' roof. As the Eighth Circuit has recognized in

---

[1] This case involves the opposite of the factual circumstances in *Franklin v. Lexington Insurance Co.*, 652 S.W.3d 286 (Mo. App. W.D. 2022), where the plaintiff "did *not* seek an additional payment through the replacement cost provisions in the policy," and "*never* submitted invoices, receipts, or other documentation for further payments," and thus was entitled to seek an additional ACV payment in litigation. *Id.* at 293-94 (emphasis added).

applying Missouri law, an estimate is merely an approximation that is "subject to review by a jury in a lawsuit to determine the amount of [the] loss." *In re State Farm Fire & Cas. Co.*, 872 F.3d 567, 576 (8th Cir. 2017); *see also*, *e.g.*, *Three Rivers Rock Co. v. M/V Martin*, 401 F. Supp. 15, 17 (E.D. Mo. 1975) (court accepted one estimate of the cost of raising and repairing a damaged boat and rejected a competing estimate). Here, it turned out that Travelers' estimate that it might cost $12,540.99 to make the repairs was inaccurate—Travelers' estimate turned out to be $2,355.99 higher than the $10,185 that the Ledfords' contractor charged to perform the work. (Plaintiffs' Responses to Defendant's Material Facts, ¶¶ 3-5.) If Plaintiff is permitted to sue for additional ACV (despite the Policy's plain language to the contrary, as discussed above), the ACV must be calculated based on applying depreciation to the *actual* (not estimated) RCV. According to Plaintiff's own expert, the appropriate depreciation on Plaintiff's claim is approximately 15.9% (i.e., $1,992.97 on an estimated RCV of $12,540.99). (ECF Doc. 26-2, at 33.) Applying the same percentage to the actual RCV of $10,185, the depreciation would be $1,619.41 (i.e., 15.9% of $10,185), for an ACV of $8,565.59 before the application of the deductible ($1,500). After subtracting the deductible, the total would be $7,065.59. Travelers paid $8,685 on an RCV basis (ECF Doc. 12-1, ¶ 9), and thus Plaintiff could not recover any additional funds by electing to make a claim on an ACV basis (even if that election were somehow still available after submitting an RCV claim under the Policy, and it is not).

## II.    PLAINTIFF IS NOT ENTITLED TO INTEREST ON ANY ALLEGEDLY LATE PAYMENT

Based on Section I above, Plaintiff is not entitled to the $363.02 he claims as "principal" under the Policy, leaving only his claim for interest on any allegedly late payment. On that issue, Plaintiff argues that "motions concerning prejudgment interest are typically resolved via post-trial motion after both liability and the amount of any unpaid principal are determined." (Opp.,

ECF Doc. 26, at 4.) While Travelers does not dispute that prejudgment interest is frequently addressed on a post-trial motion, if the Court agrees with Travelers' position in Section I, it would be more efficient to decide the prejudgment interest issue now, rather than to enter judgment in favor of Travelers and then have Plaintiff file a motion for prejudgment interest. *See* Fed. R. Civ. P. 1 (rules should be applied "to secure the just, speedy, and inexpensive determination of every action and proceeding").

On the merits of the interest issue, Plaintiff simply ignores the Missouri appellate authority cited by Travelers, under which ""[g]enerally, a policyholder is entitled to interest from the date the claim became payable under the policy," and "[p]rejudgment interest on liquidated claims is allowed only after demand of payment is made," which "must be definite on amount and time." *Nelson v. Farm Bureau Town and Country Ins. Co. of Mo.*, 560 S.W.3d 81, 92-93 (Mo. App. W.D. 2018). Plaintiff's brief digresses into a lengthy and irrelevant discussion of the fact that Travelers did not request a formal proof of loss on the Ledfords' claim. (Opp. at 6-8.) That makes no difference. The Policy's "Loss Payment" provision provides that "[l]oss will be payable 60 days after we receive your proof of loss *and*: **a.** Reach an agreement with you; **b.** There is an entry of final judgment; or **c.** There is a filing of an appraisal award with us." (ECF Doc. 12-2, at 26 (italics added).) Thus, if a proof of loss is not requested, payment is due 60 days after an agreement, final judgment, or appraisal award.

Plaintiff ignores the "labor depreciation" case cited by Travelers involving a similar Loss Payment provision, in which no proof of loss was submitted, and the court held that prejudgment interest was not owed, "[b]ecause the parties could not reach an agreement and no judgment has yet been entered." *Adams v. Auto-Owners Ins. Co.*, No. 21-CV-2003, 2021 WL 6622511, at *2-3 (C.D. Ill. Oct. 25, 2021); *see also Spink v. Mercury Ins. Co.*, 260 S.W.2d 757, 762 (Mo. App.

1953) ("The amount of the loss was agreed upon December 3, 1950. Sixty days after this date is the time when the interest awarded should run."). On the facts of this case, there is no dispute that Plaintiff has not obtained a final judgment or appraisal award. In a footnote, Plaintiff weakly attempts to suggest that an agreement was reached, on the basis that "[t]he ACV payment Travelers issued to Plaintiff reflects the *undisputed* portion of Plaintiff's claim." (Opp. at 6 n.3.) But a unilateral decision to make a payment is plainly not an *agreement*, which requires a meeting of the minds of both parties. *See, e.g.*, *Klamen v. Genuine Parts Co.*, 848 S.W.2d 38, 40 (Mo. App. E.D. 1993) ("It has long been black letter law in Missouri that a meeting of the minds is a prerequisite to the formation of a contract."). Prejudgment interest is therefore not owed under *Nelson* and *Adams*.

Plaintiff argues that "waiver of the proof of loss form renders both the proof of loss condition and Loss Payment condition irrelevant" (Opp. at 8), but the cases he cites do not support that proposition. *See Burgess v. Mercantile Town Mut. Ins. Co.*, 89 S.W. 568 (Mo. App. 1905) (addressing only proof of loss provision, not loss payment provision); *Miles v. Iowa Nat'l Mut. Ins. Co.*, 690 S.W.2d 138 (Mo. App. W.D. 1985) (same); *Arnold v. State Farm Fire & Cas. Co.*, 2020 WL 6879271, at *7 (S.D. Ala. Nov. 23, 2020) (class certification decision not addressing prejudgment interest, proof of loss provision or loss payment provision); *Central Baptist Church of Albany Ga. Inc. v. Church Mut. Ins. Co.*, 2020 WL 5496096, at *2 (M.D. Ga. Aug. 12, 2020) (applying Georgia law under which prejudgment interest runs from date on which suit can first be brought).

Plaintiff simply ignores the Missouri and Eighth Circuit authority cited by Travelers under which "[p]rejudgment interest on liquidated claims is allowed only after demand of payment is made," and the demand "must be definite on amount and time." *Nelson*, 560 S.W.3d

at 93; *see also Macheca Transp. Co. v. Philadelphia Indem. Ins. Co.*, No. 4:04-CV-178 CEJ, 2012 WL 5948900 (E.D. Mo. Nov. 28, 2012), *aff'd in part, rev'd in part*, 737 F.3d 1188, 1996 n.7 (8th Cir. 2013) (where there was no specific demand for payment, interest did not accrue until after lawsuit was filed). Plaintiff does not contend that any demand for payment was made prior to suit for the "labor depreciation" amount. Plaintiff submitted only the contractor's invoice, the remaining amount of which was promptly paid by Travelers the same day it was received. (Plaintiff's Responses to Defendant's Material Facts, ¶ 6.) Interest is therefore not owed because there was no delay in payment after a demand. *See also*, *e.g.*, *Watters v. Travel Guard Int'l*, 136 S.W.3d 100, 111 (Mo. App. E.D. 2004) ("Under section 408.020, prejudgment interest on liquidated claims is allowed only after demand of payment is made."); *Transamerica Ins. Co. v. Pa. Nat'l Ins. Cos.*, 908 S.W.2d 173, 177 (Mo. App. E.D. 1995) (applying same rule).

The only case Plaintiff cites on this point, *Sisson v. Patel*, 2022 WL 497347 (W.D. Mo. Jan. 26, 2022), is easily distinguishable. In *Sisson*, the court held that a demand was not required because "the amount of rent required by the parties' agreements … was set in a written contract." *Id.* at *7. The amount due under a homeowners' insurance policy for damage caused by a windstorm cannot be compared to the amount of rent due under a lease. The amount due for wind damage is not stated in the insurance policy, but rather requires a detailed inspection of the property, preparation of an estimate and application of the policy provisions. Plaintiff cites no insurance case holding that a demand for payment is not required.[2] In *Nelson*, *Transamerica* and *Macheca*, the Missouri Court of Appeals and the Eighth Circuit have recognized that a demand

---

[2] Plaintiff cites *Labrier v. State Farm Fire & Cas. Co.*, 147 F. Supp. 3d 839 (W.D. Mo. 2015), which recognizes, consistent with Travelers' position here, that "[i]nterest is allowed from the time of demand, or if no demand is made, from the date a lawsuit is filed," and the demand "must be definite as to amount and time." *Id.* at 852.

7

for payment is required before prejudgment interest accrues in insurance cases. If, as here, no

pre-suit demand was made, prejudgment interest does not accrue until suit is filed. *See*, *e.g.*,

*BBMB, Inc. v. Pennsylvania Lumbermens Mut. Ins. Co.*, 2012 WL 2848675, at *3 (E.D. Mo. July

11, 2012) ("If the party has not made a demand for prejudgment interest before filing suit, then

Missouri law considers the filing itself to constitute a demand, as required for prejudgment

interest to begin to accrue."). Given that Plaintiff was paid in full before suit was filed, *see*

Section I above, Plaintiff has no viable claim for prejudgment interest.

The other Missouri cases Plaintiff cites do not support his position that interest is owed

here without a pre-suit demand for payment. *See Mitchell v. Residential Funding Corp.*, 334

S.W.3d 477, 509 (Mo. App. W.D. 2010) (awarding prejudgment interest on amounts lender

unlawfully charged as interest on mortgage loans); *Travelers Prop. Cas. Co. of Am. v. Jet

Midwest Technik, Inc.*, 2019 WL 2411443, at *1-3 (W.D. Mo. June 7, 2019) (on claim for unpaid

premium, prejudgment interest was due only from date that payment was demanded by insurer).[3]

## III. PLAINTIFF IS NOT ENTITLED TO DECLARATORY RELIEF

On the declaratory judgment claim, Plaintiff again simply ignores the cases cited by

Travelers. These cases hold that a request for declaratory relief is not an independent cause of

action, *STIM, LLC v. Aecom Tech. Servs., Inc.*, 2016 WL 1298145, at *2 (W.D. Mo. Apr. 1,

2016) (dismissing declaratory judgment claim), and that dismissal is appropriate where

adjudication of the breach of contract claim will resolve the request for declaratory relief.

---

[3] To the extent Plaintiff cites Alabama federal district court decisions, it does not appear that
Alabama law on prejudgment interest has the same requirements that Missouri does with respect
to applying an insurance policy provision governing the timing of payment, or requiring a
demand to trigger prejudgment interest. *See Arnold v. State Farm Fire & Cas. Co.*, 268 F. Supp.
3d 1297, 1302 (S.D. Ala. 2017); *Arnold v. State Farm Fire & Cas. Co.*, 2017 WL 5451749, at *3
(S.D. Ala. Nov. 14, 2017). Plaintiffs' other "labor depreciation" cases likewise do not address the
issues presented here.

8

*Amerisure Mut. Ins. Co. v. Maschmeyer Landscapers, Inc.*, 2007 WL 2811080, at *2 (E.D. Mo. Sept. 24, 2007); *Rainey v. Standard Guar. Ins. Co.*, 2020 WL 5536486, at *4 (W.D. Mo. Sept. 15, 2020). One of the cases Plaintiff cites further confirms that "a complaint seeking a declaratory judgment that the terms of a contract have been breached is nothing more than a breach of contract claim and should be dismissed." *Nat'l Real Est. Ins., Grp., LLC v. CRC Ins. Servs., Inc.*, 2019 WL 5685238, at *7 (W.D. Mo. June 26, 2019). Here, Plaintiff seeks a declaration "that Defendant's property insurance contracts prohibit the withholding of future labor costs as described herein" (Compl. ¶ 69), the very same allegation that forms the basis for the breach of contract claim. (*Id.* ¶ 53.)

Plaintiff argues that his declaratory judgment claim should survive because it "contemplates a prospective prohibition on the offending practices" and "addresses ongoing and future duties under a contract." (Opp. at 13-14.) But Plaintiff's Policy *expired* on December 15, 2018. (ECF Doc. 12-2, at 3.) There are *no* ongoing or future duties between Plaintiff and Travelers under the expired Policy. Plaintiff has not sued under any other policy. Even if the Ledfords continue to be insured by Travelers in the future, it is purely speculative whether they will have another property insurance claim involving the same issue presented here, or whether the policy will have the same relevant provisions. If Plaintiff has no viable claim under the Policy (for the reasons set forth in Section I above), the Court cannot issue an advisory opinion on a hypothetical claim that Plaintiff might make in the future. *See*, *e.g.*, *Feldmann Imports Inc. v. Mercedes-Benz USA, LLC*, 506 F. Supp. 3d 687, 698 (D. Minn. 2020) (dismissing declaratory judgment claim because "[t]he declaratory relief that [plaintiff] seeks is purely speculative and would amount to an advisory opinion"); *Est. of Stoick ex rel. Spry v. McCorvey*, 2011 WL 3419939, at *3-4 (D. Minn. July 29, 2011) (granting summary judgment on declaratory judgment

claim because "[a] federal court has no power to render advisory opinions or to decide questions that cannot affect the rights of the litigants in the case," and "a declaratory judgment would necessarily be based upon a hypothetical set of facts, speculating about future plaintiffs or others similarly-situated"). The alleged putative class claims do not allow Plaintiff to proceed in the absence of viable individual claims. *See* ECF Doc. 12, at 8.

Plaintiff cites inapposite cases in which it appears there was some ongoing relationship or dispute apart from the alleged breach of contract, such that the declaratory relief would not be an advisory opinion. *See, e.g., Stein for Halpern Ins. Tr. dated June 7, 1994 v. Phoenix Life Ins. Co.,* 2018 WL 3375091, at *2 (E.D. Mo. July 11, 2018) ("plaintiff's declaratory judgment claim seeks a declaration that the policy is still in effect, relief that may not be available under her breach of contract claim"); *National Real Estate,* 2019 WL 5685238, at *4; *Cystic Fibrosis Pharmacy, Inc. v. Express Scripts, Inc.,* 2016 WL 7242163, at *5 (E.D. Mo. Dec. 15, 2016).[4]

## <u>CONCLUSION</u>

Travelers' motion for summary judgment should be granted, and a final judgment should be entered in favor of Travelers.

---

[4] In *Labrier*, the court denied the insurer's motion to dismiss the breach of contract claim, in a ruling later reversed by the Eighth Circuit. Given the denial of the breach of contract claim, the court declined to dismiss the declaratory judgment claim, although it found it to be duplicative. *Labrier,* 147 F. Supp. 3d at 852; *see also Cedarview Mart, LLC v. State Auto Prop. & Cas. Co.,* 2021 WL 1206597, at *5 (N.D. Miss. Mar. 30, 2021) (cited by Plaintiff; declining to dismiss declaratory judgment claim where breach of contract claim was not dismissed); *Shields v. Metro. Prop. & Cas. Ins. Co.,* 2020 WL 7338065, at *5 (N.D. Miss. Dec. 14, 2020) (same).

Respectfully submitted,

s/ Matthew D. Turner
Matthew D. Turner    #48031
ARMSTRONG TEASDALE LLP
101 E. High Street, First Floor
Jefferson City, Missouri 65101
(573) 636-8394
(573) 636-8457 (facsimile)
mturner@atllp.com

Wystan M. Ackerman (pro hac vice)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 06103
(860) 275-8388
(860) 275-8299 (facsimile)
wackerman@rc.com

**ATTORNEYS FOR DEFENDANT**
**TRAVELERS HOME AND MARINE INSURANCE**
**COMPANY**

11

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing was sent

via the Court's ECF system on this 15th day of August, 2023, to:

David T. Butsch
Christopher E. Roberts
BUTSCH ROBERTS & ASSOCIATES LLC
231 South Bemiston Ave., Suite 260
Clayton, MO 63105

Erik D. Peterson
ERIK PETERSON LAW OFFICES
110 West Vine Street, Suite 300
Lexington, KY 40507

James B McWherter
MCWHERTER SCOTT BOBBITT PLC
341 Cool Springs Blvd., Suite 230
Franklin, TN 37067

T. Joseph Snodgrass
SNODGRASS LAW LLC
100 South Fifth Street, Suite 800
Minneapolis, MN 55402

s/ Matthew D. Turner
Matthew D. Turner